**W. R. COLEMAN and Sterling Holloway, Appellants,**

**v.**

**Bryan W. FORISTER, Jr., et al., Appellees.**

**No. 12033.**

Court of Civil Appeals of Texas, Austin.

June 6, 1973.

Rehearing Denied July 18, 1973.

John W. Stayton, Stayton, Maloney, Black, Hearne & Babb, Austin, for appellants.

Malcolm Robinson, Hooper & Robinson, Austin, for appellees.

SHANNON, Justice.

Appellee landowners [1] sued appellants, W. R. Coleman and Sterling Holloway in the district court of Travis County to es-tablish their unrestricted right to use Lots 1 and 2, Block 2, Emmett Shelton Sub-division, Wilkinson Sparks Survey No. 4, Travis County, Texas, for ingress and egress to the waterfront of Bee Creek. Upon trial to the court, judgment was entered declaring that the instrument under which appellees derived their claim, granted to them the unrestricted right to use the property for ingress and egress without obstruction or interference, and mandatorily enjoined appellants to remove certain improvements and to restore the property to its condition prior to the time the improvements were constructed. The judgment will be reformed, and as reformed, affirmed.

The cause is not unfamiliar, as this is its second appearance in this Court.[2] The property in controversy consists of about one and one half acres located on Bee Creek in the City of Westlake Hills near Austin. Its border to the north is Bee Creek; to the west by the property of Arlyn Smith, to the east by the property of A. S. Hull; and to the south by Westlake Drive.

The rights of appellees are claimed under and through Emmett Shelton, the common source of title. Those rights are grounded upon deeds from Shelton as well as representations made by him prior to the execution of some of the deeds upon or under which appellees claim.

On November 30, 1955, Emmett Shelton conveyed by general warranty deed fifteen tracts out of Lots 1 and 2 to Emmett Shelton, Jr., Henry Wendlandt, Jr., Rufus King, Vann M. Kennedy, Stuart MacCorkle, Lady Grace Snow, Ivan M. Stout, Mrs. Virginia Lebermann, Frances Poole, Edna West, Temple Phinney, Sterling Holloway, and Lois M. Gibson. These tracts were all one foot wide and ten feet long, except three tracts which were twenty feet

1. Bryan W. Forister, Jr., Ivan M. Stout, Fred E. Holmes, Ann Holmes, Vernon D. Ryan, John E. Shelton, and Rufus G. King.

2. Forister v. Coleman, 418 S.W.2d 550 (Tex.Civ.App.1967). See this Opinion for a detailed statement of the facts.

long, and they lay lengthwise at the water's edge of Bee Creek. We quote from this deed:

"This grant is specifically understood to cover only a one-foot strip of land bordering the water's edge, together with the use of the land under the waters of Bee Creek that lies directly north of each space which may be used for the purpose of boat dockage. Each grantee in this deed is given the additional right of ingress and egress over the lands of grantor that lie between the property of Arlyn Smith and A. S. Hull, to the above described spaces and/or tracts. Each grantee is given the right to use the walk-way immediately south of the grants herein made for purposes of access to the various tracts, provided that no obstructions are placed upon said walk-way by any and all of the grantees herein mentioned.

It is expressly understood and agreed by the grantees herein that these grants are made in connection with the purchase of other lands from the grantor, which other lands do not have frontage on the waters of Lake Austin. This grant is made for the purpose of permitting the owners of such other lands to have access to Lake Austin. The privileges herein granted shall pass from the grantees herein to the purchasers of such other grants of land whether mention is made in such conveyances or not; it being specifically understood by the grantees herein that the privileges mentioned herein are not personal to the grantees, nor are they assignable except in connection with the title to such other lands.

The intent of this conveyance is to make water front privileges available to the owners of land in the Sparks and Chambers Surveys, who have purchased such lands from the grantor."

In the prior appeal the cause was in this Court from a summary judgment entered by the district court. This Court in an opinion by Justice Hughes reversed that judgment and remanded the cause for trial. In that opinion Justice Hughes noticed that Forister's pleadings contained allegations of fraud, mutual mistake, estoppel *in pais,* dedication, and trust relations to establish the claimed rights in Lots 1 and 2. In that opinion this Court held at page 565 that (a) issues of fact were presented as to the creation of an easement appurtenant by estoppel for park and related purposes in the property; (b) issues of fact were or could be presented as to the meaning of the words "waterfront privileges" as used in the 1955 deed; and (c) as a matter of law, the 1955 deed gave to the grantees an unrestricted right to use all of the property for ingress and egress to the waterfront.

Application for writ of error by Coleman and Holloway was refused by the Supreme Court with a notation of "no reversible error." Upon motion for rehearing, the Supreme Court filed a *per curiam* opinion noting the rationale of its refusal of writ of error since this Court had three alternative bases for its opinion. Coleman v. Forister, 431 S.W.2d 2 (Tex.1968). That opinion indicated that the majority of the Supreme Court approved the holding of this Court " . . . *that in view of surrounding circumstances,* the following language, as a matter of law, gives the grantees an unrestricted right to use the full 160 by 420 foot lot in controversy for ingress and egress to Bee Creek . . . ." (emphasis added) The pertinent language of the deed is then quoted. 431 S.W.2d 2, 3.

Appellants argue in this appeal that since appellees in their trial petition elected to rely entirely upon the "bare bones of the 1955 deed" and did not plead any facts extrinsic to that instrument, the trial court erroneously admitted testimony to show "surrounding circumstances," and erred in construing the 1955 deed "in view of the surrounding circumstances." After the court overruled appellants' objection to appellees' evidence, appellants were permitted to file a motion for continuance, which, at

a later time was denied. Appellants insist that appellees are bound by their trial petition, and say that the question for decision in this appeal is whether the 1955 deed *on its face* grants the unrestricted right to use Lots 1 and 2 for ingress and egress.

From an examination of the trial petition and statements of appellees' counsel made in the beginning of the second trial, it is apparent that certain issues in the first trial and appeal were deliberately eliminated by appellees' counsel. Some of the issues eliminated were estoppel *in pais,* fraud, and mutual mistake. From the same examination it seems that it was appellees' intention in the second trial to be guided by the language of the Supreme Court in the *per curiam* opinion by showing the circumstances surrounding the 1955 deed.

■ One of the functions of pleadings is to notify opposing counsel of the grounds upon which the pleader intends to rely. In this instance, that end was also served by the *per curiam* opinion. Long before trial time appellants were apprized by that opinion of appellees' grounds for recovery. Appellants knew that appellees, to prevail, would have to produce evidence of the "surrounding circumstances." Though appellees should have been more explicit in their trial pleadings, it is difficult to see that appellants were surprised, much less harmed, by the admission of the evidence. This is particularly true since the trial was begun on September 28, 1970, and at that time appellants levelled their objections to appellees' evidence. Then the cause was recessed for reasons of convenience of counsel and not resumed until December 21, 1970. This gave appellants ample time to marshal evidence to counter appellees' showing of the "surrounding circumstances."

■ Moreover, appellants acquiesced in any error by the court in denying their motion for continuance, since they filed no motion for new trial preserving that claimed error as required by Texas Rules of Civil Procedure 325.

By virtue of the terms of the *per curiam* opinion of the Supreme Court, the court properly admitted the evidence.

By several points of error, appellants complain of findings of fact concerning the topography of the tract and its use by certain persons. As we do not find those findings relevant to any issues here, those points will be overruled.

Most of appellants' other points claim error by the court in entering the mandatory injunction requiring appellants to remove any and all obstructions, improvements, or impediments placed on said property and to replace and reinstate the property to its condition prior to June of 1955.

In 1965, after Coleman and Holloway obtained the summary judgment in the first trial, and in the face of the perfection of the appeal in that cause, they began clearing the land with a bulldozer preparatory to building a residence. They then built that residence which they rented since that time. Though the record is not entirely clear, it appears that the occupancy of. that residence has been constant, with few exceptions, and that the amount of the rent received was $300 each month.

■ When one builds a structure on another's property, the owner can either treat the encroachment as a permanent trespass, and sue for damages, or pray for an injunction compelling its removal. If the encroachment has been intentional and if the trespasser has been grossly negligent in ascertaining the correct property line, most courts will grant a mandatory injunction for removal. To the contrary, most courts will refuse an injunction when the encroachment is slight and unintentional, the cost of removing it great and the corresponding benefit to the owner is small, or when full compensation can be given in damages. 32 Texas L.Rev. 602 (1945).

Though, in general, discouraging the use of mandatory injunctions for the removal

of encroaching structures, Dean Page Keeton and Clarence Morris have written, "Generally courts do issue a mandatory injunction requiring the removal of an encroachment when the defendant has intentionally got out of his own bounds. This seems defensible since the plaintiff's property interest is vindicated and the misbehaving defendant is punished if the removal is costly." [3]

It would seem that these same considerations should be weighed in cases involving encroachments on easements. There are cases, however, which, without having articulated these considerations, assert that an easement owner is entitled to a mandatory injunction to enforce his easement rights and to compel the fee owners to remove encroachments as a matter of law. Sheppard v. City and County of Dallas L. Imp. Dist., 112 S.W.2d 253 (Tex.Civ.App.1937, no writ); Gulf View Courts v. Galveston County, 150 S.W.2d 872 (Tex.Civ.App., 1941, writ ref'd).

 Applying the above discussed considerations to these facts, we are of the opinion that the entry of the injunction was proper. There is evidence that the residence constructed by appellants will interfere with the ingress and egress of appellees. Coleman and Holloway with full knowledge and appreciation of the risks involved in the pending litigation deliberately constructed the residence. Though the costs of removal will be considerable to appellants, those costs will be balanced in large measure by the rentals which they have received over the years.

The record reflects that it would be quite expensive and, in fact, impossible to restore the face of the land to its state before the commencement of leveling. That operation would entail the movement of tons of earth and stone, and still not

achieve that end. As this is so, the judgment will be reformed eliminating that provision which requires W. R. Coleman and Sterling Holloway " . . . to replace and reinstate the property to the condition it was in prior to June of 1965 . . . " In all other respects the judgment is affirmed.

Reformed, and as reformed, affirmed.

---

3. University of Texas: Keeton and Morris, notes on "Balancing The Equities", 18 Tex.L.Rev. 412, 415, (1940).

Many of the same considerations are present in those cases involving injunctions to remove structures in violation of building restrictions. See University of Texas; Hecke, Injunctions to Remove or Remodel Structures Erected in Violation of Building Restrictions, 32 Tex.L. Rev. 521, (1954).