Harry WEIS et ux., Appellants,

v.

Tommy G. TAYLOR, Jr., Appellee.

No. 18403.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 26, 1981.

Rehearing Denied March 26, 1981.

Carl E. Mallory, Fort Worth, for appellants.

Ben H. Tompkins, Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

Harry Weis and wife, Vernon Weis (hereinafter referred to as Weis) filed a suit seeking a declaratory judgment against Tommy G. Taylor, Jr., to the effect that $9,700.00 held in escrow by Kings Liquor Store should be paid to them. Taylor filed an answer and counter claim in which he claimed ownership of the above sum and also sought recovery judgment for the balance due on a promissory note signed by Weis and payable to him. Weis filed an amended petition still seeking a declaratory judgment and also seeking penalties for

usury alleged to have been charged by Taylor in connection with the sale of the liquor store. The trial court rendered judgment for Taylor for the balance due on the note and for the money held in escrow. Weis appealed.

We affirm.

The appellee, Tommy G. Taylor, Jr., owned several liquor stores. In the summer of 1977 Taylor met with appellants to discuss the possibility of the Weis purchase of Taylor's three liquor stores. By July 15, 1977, the parties reached a tentative oral agreement for the purchase of one store, which will be referred to as the Rosedale store.

Under the terms of this agreement Weis delivered a check to Taylor for $5,000.00. This was in the form of earnest money to secure the agreement and Taylor's agreement not to sell the Rosedale store for a period of five months. If the deal was not consummated the $5,000.00 was to be retained by Taylor. If it was consummated it was to be applied to the total price.

On November 28, 1977, Weis signed a note payable to Taylor in the sum of $20,-000.00 with zero interest to be paid in 47 monthly installments of $425.54 each, beginning February 1, 1978. In addition thereto, the parties signed a security agreement to secure the $20,000.00 note. This agreement covered the inventory, fixtures and equipment in the liquor store. It was filed with the County Clerk's office of Tarrant County rather than the Secretary of State's office.

Weis, prior to execution of the note, had paid all of the purchase price except the balance of $20,000.00. Weis made the February through June payments then defaulted. Weis attempted to resell the store to Taylor but he declined. In June 1978, Weis sold the inventory to Kings Liquor Store for $9,700.00. Kings issued a check but learned of the security agreement and stopped payment. The parties have agreed that Kings Liquor Store will pay to either Weis or Taylor this sum as directed by the court.

When the parties were preparing to prepare the note and security agreement, they had a conversation about the balance due. Wes flew in from California and was in a hurry. Taylor insisted the oral deal was that the balance of the purchase price to be $20,000.00 plus $5,000.00 interest. Weis contended there was to be no interest and the deal was about to fall through. Taylor then agreed to drop the $5,000.00 interest and to make the note with zero interest.

Weis testified that he had a different understanding with Taylor and Taylor was insisting on $5,000.00 more. In any event, Taylor's claim to the extra $5,000.00 interest was abandoned.

About five months after the note was signed and on April 7, 1978, just prior to income tax time, Weis asked Taylor to do him a favor and give him a statement that he paid $5,000.00 interest so he could take it off his income tax. Taylor accommodated him and signed and delivered to Weis a statement that the note was for $15,000.00 principal and $5,000.00 interest. Weis denied this in part but admitted most of it.

On October 12, 1978, Weis filed an original petition seeking a declaratory judgment to determine the proper owner of the funds held by Kings Liquor Store, contending that the security agreement was not valid because it was not filed with the Secretary of State and that Kings Liquor Store was an innocent purchaser for value.

Taylor filed a counter claim in which he sued for the balance due on the note. In October 1979, Weis filed an amended Petition, for the first time alleging usury as a second cause of action. The trial was to the court which rendered judgment for Taylor for the balance due on the debt. Weis contended that the note was not for $20,-000.00 in principal at zero interest but was actually for $15,000.00 principal and $5,000.00 interest and that when the note was accelerated usury was a result.

No findings of fact and conclusions of law were made. The judgment recites that the note for $20,000.00 represented a time price differential transaction and that the disputed funds held by Kings belonged to Taylor.

The Weis appeal raises five points of error. The basic contention is that error was committed in the finding of time price differential as opposed to interest; that acceleration of the time price differential charge itself results in penalties being invoked under Tex.Rev.Civ.Stat.Ann. art. 5069–8.01 and 8.02 (1971); that as the additional amount charged was usurious, the principal is forfeited as well under art. 5069–1.06 (1971); and as the $9,700.00 held by Kings secured the principal of the note, it too is forfeited.

We affirm the result reached by the trial court on other grounds.

■ Time price differential is the higher of two prices a consumer knowingly pays for the privilege of being permitted to pay for the purchase over a period of time as opposed to immediately paying the full but lesser cash price. "A seller may demand one price for cash and another and greater price upon credit, and it would not be usury." *Burkitt v. McDonald*, 64 S.W. 694, 695 (Tex.Civ.App., 1901, no writ). Time price differential is defined in art. 5069–6.01(h), *supra*, as "the amount which is paid or payable for the privilege of purchasing goods or services to be paid for by the buyer in installments over a period of time. . . . Nor shall the term be in anywise considered as interest as defined by the laws of this State."

■ The cases have uniformly held that in order for the time price differential doctrine to apply, the seller seeking its protection (to ward off the claim of usury) must fall squarely within the guidelines.

■ For the courts to be able to discern time price differential from usury the seller must prove: 1. Two prices were offered; 2. The purchaser was aware of the two offers; and 3. The purchaser knowingly chose the higher "time price". *Bradford v. Mack*, 359 S.W. 936 (Tex.Civ.App.—El Paso 1962, writ ref'd n. r. e.); *Rattan v. Commercial Credit Co.*, 131 S.W.2d 399, (Tex.Civ.App.—Dallas 1939, writ ref'd).

The Dallas appeals courts in *Rattan, supra*, discussed a transaction involving time price differential but accused of being usurious.

"No money changed hands in the transaction in the form of a loan, now was any charge made for the use, detention or forbearance of any money. The transaction was simply a sale for credit at a higher price than for cash, calculated on a known basis for the seller to realize the cash price . . . by subsequent sale of the note . . . through commercial channels. Where, in a bona fide sale, no loan of money is involved, a purchaser buys . . . for a credit price, known to the purchaser to be higher than the cash price, and signs a note . . . for the unpaid balance, such transaction is an actual sale . . . on time or credit selling price, . . . ." (131 S.W.2d 399, 400.)

■ Weis vigorously contended that the sales transaction for the purchase of the Rosedale store from Taylor fails to satisfy the three requirements for time price differential. We agree. We have carefully examined the entire record. Nowhere is there any indication that Weis was offered two prices, one representing a cash price and a larger figure representing a time price differential.

Proving time price differential can, by its very nature, defeat a claim of usury. The converse, however, is not so. Our determination of no time price differential does not in itself result in a conclusion of usury, for implicit in the trial courts explicit finding of time price differential is its finding of no usury. Our determination of no time price differential still leaves Weis with the burden of proving the existence of usury. This they have failed to do.

The statement of facts indicate a trial full of confusing testimony, figures and dates. Despite repeated exhortations from the trial judge to counsel to elicit clear, concise and fruitful testimony, the facts presented were in a state of disarray. However, this court has the advantage of a statement of facts. Our study of the testimony satisfies this court that there was no usury.

It is Weis's contention that the note for $20,000.00 listed as principal at zero interest actually was for $15,000.00 in principal and $5,000.00 in interest, which amount became usurious upon default and Taylor's acceleration of the entire note. We do not comment on whether or not this state of facts, if true, would constitute usury. We only state that Weis has failed to prove that the original note was for anything other than what it stated.

■ We conclude that Weis has failed to establish the presence of usury in this transaction. In view of the fact that both parties acknowledged the confusion and their difference of opinion as to the transaction as originally made, it is highly probable that the parties may have chosen to resolve their differences as the evidence and original note indicated when Taylor yielded on his request for interest and had Weis sign a note for $20,000.00 at zero interest.

Affirmed.