**EL PASO DEVELOPMENT COMPANY**
and El Paso Natural Gas
Co., Appellant,

v.

**G. Phil BERRYMAN, Appellee.**

No. 13–86–573–CV.

Court of Appeals of Texas,
Corpus Christi.

March 18, 1987.

Montgomery J. English, Corpus Christi, Randy W. Williams, Houston, for appellant.

James R. Harris, Norma J. Thomas, Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from the issuance of a temporary injunction restraining appellant mortgagee from foreclosing a deed of trust on 667 acres of undeveloped real property located in San Patricio and Nueces Counties. In 1978, appellee and others contracted with appellant to purchase 1,620 acres of land, 1377 acres of which were originally secured by a deed of trust. Through a series of reinstatement agreements and lien releases, approximately 710 acres have been sold, leaving only 667 acres burdened by the lien. In August, 1986, appellee filed suit against appellant alleging that the original contract was usurious. Appellant then posted the property for foreclosure. On October 3, 1986, the trial court issued a temporary restraining order stopping the sale. A hearing was held on appellee's application for a temporary injunction, after which the trial court issued the injunction enjoining the sale until a final resolution of the usury claim.

In February, 1978, the parties entered into a contract whereby appellee was to purchase the property for cash. The contract was conditioned on appellee obtaining financing from other sources, which he was unable to do, and the contract terminated. The sales price of this contract was $4,500 an acre, or approximately $7.2 million.

In July, 1978, the parties re-negotiated and executed a contract for a credit sale of this same property. There is evidence in the record that, in order to finance the sale, appellant required that it make twenty-six percent profit on its land and money, before taxes. The purchase price for the same property was then set at $10 million, or $6,172.84 per acre. Appellee paid $1.5 million cash and executed a note for $8.5

million at eight percent interest, with ten percent after maturity until paid. The payout period under the contract was four years.

It appears from the record that appellee at least partially defaulted on its payments. At each instance, the parties executed modification and/or reinstatement agreements. In March, 1983, appellee executed a note for approximately $4.5 million to appellant, which was a renewal of the July, 1978 note, and which was secured by the remaining 667 acres. Appellee is now in default under that note in excess of $6 million including accrued interest. Appellee asserts that he has paid over $9 million in cash and credits on the property and notes from the outset to date.

Appellee bases his usury claim on the $2.8 million difference between the February and July sales prices. He argues the sales price was inflated to allow appellant "interest" in excess of double the amount allowed by law (ten percent). He asserts that the contract did not disclose the addition of $2.8 million to the sales price. This he contends is usury for which appellant must forfeit interest and principal under the law in effect at that time. *See* footnote 2.

█ Appellant first argues that appellee is not entitled to equitable relief until he first does equity. Here, according to appellant, appellee has not tendered, or demonstrated an ability to pay, the amount of debt appellant asserts he owes. Appellant cites cases which hold that under funda-

mental principles of equity a debtor seeking equitable relief from foreclosure must first tender the full sum of the admitted debt.[1] In each of the cited cases, however, the mortgagor admitted, or did not contest, owing some part of the debt in question. In the instant case, the mortgagor (appellee) affirmatively alleges that the transaction is usurious in that the "interest" charged is in excess of double the amount allowed by law. If appellee prevails on this allegation, appellant would forfeit all principal as well as interest. In other words appellee would owe appellant nothing.

Appellant characterizes appellee's testimony as an admission that he owes an outstanding balance on the note and is unable to pay it. On cross-examination appellee stated that, "we are not current on our note payment to El Paso." He also added, "[W]ell, under this note, it is our contention I owe nothing." Nowhere in this record does appellee admit any debt beyond the scope of his usury claim.

Appellant contends that appellee would still owe the principal of the note regardless of whether the contract is usurious, citing *First State Bank v. Miller,* 563 S.W.2d 572, 577 n. 7 (Tex.1978) as authority. That case is not on point because it involved a usury claim for less than double the amount of interest allowed by law under Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 § 1.[2] Section 1 provides for a forfeiture of twice the amount on interest, not of any principal. Appellee brought his usury claim under Article 5069–1.06 § 2. Section 2 speaks for itself. Appellant's first point of error is overruled.

1. *Goldfrank & Co. v. Young,* 64 Tex. 432, 439–41 (Tex.1885); *Breitkreutz v. Cook,* 135 Tex. 574, 144 S.W.2d 534, 537 (Tex.Comm.App.1940) (opinion adopted); *Grella v. Berry,* 647 S.W.2d 15, 18 (Tex.App.—Houston [1st. Dist.] 1982, no writ); *Ginther-Davis Center, Ltd. v. Houston National Bank,* 600 S.W.2d 856, 864 (Tex.Civ.App.—Houston [1st. Dist.] 1980, writ ref'd n.r.e.); *Poff v. Rollinsford Savings Bank,* 105 S.W.2d 782, 783–84 (Tex.Civ.App.—Amarillo 1937, no writ); *Carden v. Short,* 31 S.W. 246, 248 (Tex. Civ.App.1895, writ ref'd). *See also Justice Mortgage Investors v. Thompson Construction Co.,* 533 S.W.2d 939, 943–44 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.).

2. At all times relevant to the transaction in the instant case, the penalty provision of the general usury law (Subtitle 1 of Article 5069) provided for the forfeiture of principal in addition to interest, if the interest contracted for was in excess of double the amount allowed by law (ten percent). Act of May 23, 1967, ch. 274, § 1, 1967 Tex.Gen.Laws 608, 609–10, *amended by* Act of May 24, 1979, ch. 281, § 1, 1979 Tex.Gen. Laws 604, 604–05. The two provisions of this act relevant in the instant case have not changed since 1967, and presently appear in Tex.Rev.Civ.Stat.Ann. art. 5069–1.01(a), 1.06(2) (Vernon 1987).

By its second point of error, appellant argues the trial court abused its discretion in issuing the injunction. A trial court is clothed with broad discretion in determining whether to issue a temporary injunction to preserve the status quo pending final trial of the case on the merits. *State v. Southwestern Bell Telephone Co.,* 526 S.W.2d 526, 528 (Tex.1975); *Swanson v. Grassedonio,* 647 S.W.2d 716, 718 (Tex. App.—Corpus Christi 1982, no writ); *Peoples Trust Co. v. Rivera,* 355 S.W.2d 267, 268 (Tex.Civ.App.—Houston 1962, no writ). The granting or denial of a temporary injunction will not be disturbed absent a clear abuse of discretion. *Southwestern Bell Telephone Co.,* 526 S.W.2d at 528; *Peoples Trust,* 355 S.W.2d at 268. To invoke a trial court's discretion to issue a temporary injunction, an applicant need only produce evidence tending to prove a probable right to recovery on the merits and a probable injury if the injunction is not granted. *Irving Bank & Trust Co. v. Second Land Corp.,* 544 S.W.2d 684, 687 (Tex.Civ.App.— Dallas 1976, writ ref'd n.r.e.). In reviewing the issuance or denial of a temporary injunction, we view the evidence in a light most favorable to the trial court's judgment. *Canales v. Borg-Warner Acceptance Corp.,* 663 S.W.2d 677, 679 (Tex.App. —Corpus Christi 1983, no writ); *Diesel Injection Sales & Service, Inc. v. Renfro,* 619 S.W.2d 20, 21 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

Appellant contends appellee has not established a probable right of recovery on his usury claim. Appellant argues the July transaction included both a cash sale and a credit sale of the 1,620 acres. According to appellant, appellee bought 243 acres for $1,500,000 cash and 1,377 acres for $8,500,-000 on a credit sale. According to appellant, there was no add-on charge because both the cash price and the time price were the same per acre ($6,172.84).

On cross examination, appellee was asked whether, (in effect) he had paid $1.5 million cash for 243 acres and $8.5 million for the remainder of the acreage. Appellee answered that he "paid a million five down and there were two deeds. There was one deed for 243 acres and another deed for 1377 acres." He also stated that a "portion of that money [$1.5 million] was not all purchase price, it was really the difference between $4,500.00 an acre which was the real value of the property and [$6,172.00] that you charged, the difference was $406,-000.00."

The record before us is not fully developed regarding this issue. Whether the July transaction was a credit sale of 1,620 acres or a cash sale for 243 acres and a separate credit sale of 1377 acres is an issue which goes to the merits of the usury claim. We have conflicting evidence before us on this issue. Appellant's contention does not take into account the role of the February cash price of $4,500.00 per acre for 1,620 acres.

Next appellant argues that even if the July sales price was inflated by $2.8 million over the February cash price of $7.2 million to give appellant a twenty-six percent rate of return, still there was no usury. Appellant argues this "add-on" to the purchase price was a permissible time price differential arising from a credit sale, and thus, appellee has not demonstrated a probable right of recovery.

Article 5069–1.01(a) provides that "interest" is "the compensation allowed by law for the use or forbearance or detention of money; provided however, *this term shall not include any time price differential however denominated arising out of a credit sale.*" (Emphasis ours.) By judicial definition, time price differential is the higher of two prices a purchaser knowingly pays over a period of time as opposed to immediately paying the full, but lesser cash price. *Commercial Credit Equipment Corp. v. West,* 677 S.W.2d 669, 675 (Tex. App.—Amarillo 1984, writ ref'd n.r.e.); *Weis v. Taylor,* 613 S.W.2d 332, 334 (Tex. Civ.App.—Ft. Worth 1981, writ ref'd n.r.e.). A seller may charge a higher price for a credit or time sale than for a cash sale, and the difference between the cash price and

the deferred payment price is the time price differential. *Rotello v. International Harvester Co.*, 624 S.W.2d 249, 252 (Tex. App.—Dallas 1981, writ ref'd n.r.e.). A true time price differential will not be deemed "interest" and will not fall within the purview of the general usury law, even if the deferred payment price exceeds the cash price plus lawful interest. *Rotello v. Twin City International, Inc.*, 616 S.W.2d 318, 319 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

■ Time price differential is an affirmative defense to an action for usury. *Commercial Credit Equipment Corp.*, 677 S.W.2d at 674. The requirements of a time price differential are that: (1) two prices were offered; (2) the purchaser was aware of both the cash price and time price; and (3) the purchaser knowingly chose the higher time price. *Weis*, 613 S.W.2d at 334; *see also Rattan v. Commercial Credit Co.*, 131 S.W.2d 399, 399–400 (Tex.Civ.App.— Dallas 1939, writ ref'd). Other cases specifically defining time price differential under Subtitle 1 slightly modify the test, and require that a cash price and a time price be offered the purchaser at the time the contract is formed and the finance charge (the difference between the two prices) must be set forth in the contract. *Rotello v. International Harvester Co.*, 624 S.W.2d at 251; *Rotello v. Twin City International, Inc.*, 616 S.W.2d at 319.

Appellee brought his usury claim under the general usury law, Subtitle 1 of Article 5069–1.06(2). Time price differentials are only regulated or limited under Subtitle 2 of Article 5069. This applies only to the sale of manufactured homes, motor vehicles and consumer goods.[3] *Rotello*, 624 S.W.2d at 251. Conceivably, a time price differential falling under Subtitle 1 is not limited either in amount or by the type of goods sold. It is not necessary for us to decide this question at this time.

Our research reveals only one modern case involving a time price differential de-

fense against a usury claim arising from a purchase of real property. There appears to be no deviation from the time price differential test discussed above when a purchase of real estate is involved. The contract in *Mid States Homes, Inc. v. Sullivan*, 592 S.W.2d 29, 31 (Tex.Civ.App.— Beaumont 1979, writ ref'd n.r.e.) was held to provide for a valid time price differential because on its face it showed both a cash price and a time price which were revealed to the purchaser at the time the contract was formed, and the finance charge was set forth as such.

■ Appellant has not cited us any cases that have upheld a higher deferred payment price which did not meet the time price differential test. Whether the February cash contract should be considered in determining if a "cash" price existed at the time the credit contract was formed is an issue that raises substantial questions of fact and law which have not yet been fully developed in the record. These are questions that may ultimately be determinable after all of the facts are developed on the merits of the usury claim. The trial court had the discretion to reserve these questions for a trial on the merits. The ultimate legal rights of the parties should not be decided piecemeal in an appeal from an interlocutory order which merely preserves the status quo pending trial. *Irving Bank*, 544 S.W.2d at 688. We find from the entire record that appellee has sufficiently established for the benefit of the trial court a probable right to recovery to invoke the trial court's discretion to issue a temporary injunction.

■ Appellant also asserts that appellee was not entitled to a temporary injunction because he has an adequate remedy at law under Article 5069–1.06, should he prevail on his usury claim. The test for determining if an existing remedy is adequate is whether it is as complete and as efficient

---

**3.** The instant transaction does not come within the scope of Subtitle 2 because it involves the

purchase of real estate for commercial use.

as is equitable relief. *Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.—Houston [14th Dist.] 1982, no writ). Every piece of real estate is unique, and if foreclosure were allowed before a full determination of the usury claim, appellee would be irreparably harmed. When ownership of real estate is at issue, existence of a cause of action for damages is no basis for denying equitable relief. *Irving Bank*, 544 S.W.2d at 688.

■ Appellant also urges a laches argument. Appellee testified that he believed he was being charged an illegal rate of interest in 1978 when the second contract was executed. He did not assert his usury claim until 1986. Appellant does not, however, assert that the usury claim is barred by limitations. The trial court heard this testimony and had discretion to consider it or not. This is not a situation where the condition of the party resisting the issuance of an injunction has so changed that it cannot be restored to its former state. *Cf. Keene v. Reed*, 340 S.W.2d 859 (Tex. Civ.App.—Waco 1960, writ ref'd). Although only 667 acres remains to secure the note, there is undisputed testimony that it is worth much more than the balance remaining on the note. We overrule appellant's second point of error, and hold that the trial court did not abuse its discretion by issuing the temporary injunction.

By its third point of error, appellant again argues the trial court abused its discretion in setting the amount of the bond at $15,000. Tex.R.Civ.P. 684 provides that before granting a temporary injunction the trial court shall require the applicant to post a bond "in the sum fixed by the judge," payable to the adverse party. The purpose of the bond is to secure payment to the party against whom the injunction is granted in the amount of damages that party would suffer if the injunction is subsequently dissolved. *Westside Airways, Inc. v. JR Aircraft Corp.*, 694 S.W.2d 100, 104 (Tex.App.—Houston [14th Dist.] 1985, no writ).

■ A temporary injunction issued without a bond is void. *Whitlow v. Polley*, 670 S.W.2d 318, 319 (Tex.App.—Tyler 1984, no writ). However, failure to require a bond in a sufficient amount does not render void such injunction. *Lindley v. Easley*, 59 S.W.2d 927, 929 (Tex.Civ.App.—Eastland 1932, no writ); *see also Speedman Oil Co. v. Duval County Ranch Co.*, 504 S.W.2d 923, 931 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.).

■ Appellant points to undisputed evidence that the outstanding balance on the note is $7,471,766.89 and that interest is accruing on the outstanding balance at a rate of $2,835.69 per day. It argues that a bond of $15,000 is insufficient to protect it from damages and costs it would suffer if the injunction was erroneously granted. Appellant cites *Southland Life Insurance Co. v. Stone*, 112 S.W.2d 336 (Tex.Civ.App.—Dallas 1938, no writ) as holding that, upon dissolution of an injunction enjoining foreclosure under a deed of trust, the lender is entitled to recover from the borrower interest on the amount which the sale of the property would have decreased the debt during the effective period of the injunction. We fail to follow this reasoning, as did the court in *Kaspar v. Keller*, 466 S.W.2d 326 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e.). The facts in *Kaspar* are similar to those in *Southland*. The court in *Kaspar* reasoned that the lender lost no interest during the period the injunction was in effect. The interest continues to accrue on a note during the effective period of an injunction without interruption. The ultimate amount of the deficiency on the note did increase due to the accrual of interest while the sale was enjoined. However, the court held that this increase in the amount of the debt was damage to the borrower and not to the lender. The court characterized the reasoning in *Southland* as fallacious and noted that it confused the position of the parties.

We find the reasoning in *Kaspar* much more sound. The trial court's order in the instant case does not interrupt the accrual of interest on this note. The evidence reflects that the value of the remaining col-

lateral is much more than the outstanding balance due on the note. There is evidence that appellee cannot sell any of the acreage without appellant's consent. Besides the per diem accrued interest, appellant has not established how it is damaged while the injunction is in effect.

Appellant cites *Conte*, 641 S.W.2d at 409 as authority to require appellee to post a bond equaling two years' interest on the note. The trial court in *Conte* did require the applicant to post such a bond. However, the sufficiency of the bond was not at issue in *Conte*, and it is not authority for that proposition.

A trial court has considerable discretion in setting the amount of bond for a temporary injunction. *Coastal Bend Milk Producers Association v. Garcia*, 368 S.W.2d 260, 264 (Tex.Civ.App.—San Antonio 1963, no writ). While the amount of the bond set by the trial court seems low, there is nothing in the record to show that it is clearly insufficient. Although the trial court may have characterized this bond as an appellate cost bond, we will view it as a temporary injunction bond. Based on the record before us, we cannot say that the trial court abused its discretion in setting the amount of this bond. Point of error three is overruled.

We have considered all of appellant's points of error, and they are overruled. Because of the substantial questions involved in this lawsuit, we suggest that the trial court give this case a preferential setting for an early determination of the merits. *See Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union*, 151 Tex. 239, 248 S.W.2d 460, 464 (1952). Assuming the able trial judge will follow our suggestion, the judgment of the trial court is AFFIRMED.