**EL PASO DEVELOPMENT COMPANY
and El Paso Natural Gas
Company, Appellants,**

v.

**G. Phil BERRYMAN, Appellee.**

No. 13–88–023–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 28, 1989.

Rehearing Denied April 27, 1989.

Second Motion For Rehearing
Denied May 25, 1989.

Harvey F. Cohen, Roger Townsend, Fulbright & Jaworski, Jess Hall, Jr., James W. Paulsen, Liddell, Sapp, Zivley, Hill & LaBoon, Houston, for appellants.

J. Norman Thomas, James R. Harris, Harris, Browning, Jordan & Hyden, Corpus Christi, for appellee.

Before UTTER, KENNEDY and BENAVIDES, JJ.

## OPINION

UTTER, Justice.

El Paso Development Company and El Paso Natural Gas Company appeal a judgment rendered in favor of G. Phil Berryman in a usury case. The trial court entered judgment for $15,887,217.71, plus interest and attorney's fees and voided Berryman's note obligations, the deed of trust, and the vendor's lien securing the note. Appellants attack the sufficiency of the evidence to support the jury findings, the awards of pre-judgment and post-judgment interest, the exclusion of jury issues and evidence, the calculation of damages, and the trial court's finding that El Paso Natural Gas Company was the alter ego of El Paso Development Company.

Appellants argue in their first two points of error that the trial court erred in entering judgment for plaintiff based upon the jury's negative answer to special issue No. 5, asking whether both a cash price and a credit price were offered during negotiations because the defense of time price differential was established as a matter of law, or alternatively, such answer was against the great weight and preponderance of the evidence. Appellant further alleges that there was no evidence to support the jury's answer to Special Issues Nos. 1 and 2 wherein the jury found that $2,706,391.00 of the $10 million dollar contract price was interest, or in the alternative, the evidence was factually insufficient to support the jury's answers thereto.

For us to properly analyze appellant's first two points of error, it is necessary that we establish an overview of the general law of usury and the specific defense of time price differential in seller financed real property transactions. Since 1857, Texas has recognized the time price differential defense to a claim for usury. *See Shirkey v. Hunt,* 18 Texa 883 (1857). In *Fisher v. Hoover,* 21 S.W. 930 (Tex.Civ. App.—1893, no writ), the Texas Court of Civil Appeals dealt for the first time with the question of the application of the defense of time price differential to a claim for usury in a real estate transaction. The court acknowledged that a seller may lawfully have two prices for his property, one for a cash sale and a much larger one for a sale on time; acknowledging the defense of time price differential. The court went on to recognize, however, that if the parties agree on a price for the property and then execute a note which exacts a higher price than the agreed upon price, the difference in the two prices constitutes interest. In *Burkitt v. McDonald,* 64 S.W. 694 (Tex. Civ.App.1901, no writ), the court again recognized that "a seller may demand one price for cash and another and greater price upon credit and it will not be usury …". *Burkitt,* 64 S.W. at 695.

We are unable to find any other cases from either the Texas Supreme Court or the courts of appeals until modern times which deal with the application of the time price differential defense to the sale of real property. In a recent case, *Mid States Homes, Inc. v. Sullivan,* 592 S.W.2d 29 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.), the court was confronted with the issue of the application of the time price differential to a real estate transaction. In *Mid States,* the court held that the defense was applicable to a real estate transaction.

■ All parties agree that Tex.Rev.Civ. Stat.Ann. art. 5069–1.01(a) (Vernon 1987) applies to this case. Section 1.01(a) provides:

"Interest" is the compensation allowed by law for the use or forbearance or detention of money; provided however, this term shall not include any time price differential however denominated arising out of a credit sale.

However, no definition of "time price differential" is found in the general usury statute.

The Consumer Credit Code, Tex.Rev.Civ. Stat.Ann. art. 5069–2.01 et seq., also uses the term time price differential in art. 5069–6.02 (Vernon). There is no definition of this term in the Code. However, as stated by the Amarillo Court of Appeals in *Commercial Credit Equipment Corp. v. West,* 677 S.W.2d 669 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.),

By judicial definition, time price differential is the higher of two prices a consumer knowingly pays over a period of time as opposed to immediately paying the full, but lesser cash price. *Weis v. Taylor,* 613 S.W.2d 332, 334 (Tex.Civ. App.—Fort Worth 1981, writ ref'd n.r.e.); *Rattan v. Commercial Credit Co.,* 131 S.W.2d 399 (Tex.Civ.App.—Dallas 1939, writ ref'd). As the court stated in *Weis:* "For the courts to be able to discern time price differential from usury the seller must prove: 1. Two prices were offered; 2. The purchaser was aware of the two offers; and 3. The purchaser knowingly chose the higher 'time price.'" *Id.* at 334. *Commercial Credit Equipment,* 677 S.W.2d at 675.

We concur in the Amarillo Court's decision and determine that the definition of time price differential and the proof necessary to support the claim under art. 5069–1.01 should be consistent with the definition of time price differential under Article 5069–2.01. *El Paso Development Co. v. Berryman,* 729 S.W.2d 883 (Tex.App.— Corpus Christi 1987, no writ).

With the foregoing definition and burden of proof applicable to this case, we will review the evidence to ascertain whether the evidence sustains appellants' contentions following the well-established test set forth in *Pool v. Ford Motor Co.,* 715 S.W. 2d 629 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361 (1960).

The record reflects that Berryman was originally contacted by Bill Bates, a real estate agent for El Paso Natural Gas Company, concerning the purchase of a 1,620 acre tract of land located near Portland, Texas. The tract was owned by El Paso Development Company. Berryman met with Robert Montgomery, El Paso Development Company's representative, to discuss the sale. The parties entered into an earnest money contract for the sale of the land on February 2, 1978. The cash price was $7,293,609.00 or $4,500.00 per acre. The contract was subject to Berryman's obtaining financing for the property and he was given 90 days to obtain financing. He was unable to obtain the required financing and received an extension of the contract for an additional 60 days in consideration of the payment of $75,000.00. This extension was to terminate on July 2, 1978. It appeared that Berryman would be unable to obtain the necessary financing by July 2nd. Berryman testified at trial that he had spoken with real estate agent Bates who suggested that El Paso might be amenable to owner financing if El Paso could obtain 26% return on their investment. On May 18, 1978, and May 22, 1978, Berryman wrote Montgomery letters suggesting an amendment to their sale contract, allowing for a credit purchase price of $10,000,-000.00. The basic terms suggested were $1,500,000.00 down with a balance of $8,500,000.00 to be repaid at 8% interest over a period of seven years. El Paso Development never responded to his letters of May 18th and 22nd.

In June of 1978 Berryman prepared and forwarded to El Paso Development an addendum to the February 2, 1978 contract which provided that without waiving his right to purchase the property for cash, his offer to purchase the property for a credit price and terms as set forth in his letters of May 18th and 22nd. El Paso Development never acknowledged receipt or accepted the proposed addendum of June, 1978. It is undisputed that all offers to purchase the property on credit prior to the expiration of the extension agreement, which expired on July 2, 1978, were made by Berryman and were not accepted by El Paso Development

and up until the time the cash purchase contract expired on July 2, El Paso Development never offered Berryman a credit purchase contract.

On July 2, 1978, the cash contract for $7,293,609.00 expired. A $10,000,000.00 credit contract was signed on July 20, 1978. The credit contract further stated:

> This contract is made and entered into subsequent to the expiration and termination of a previous contract for the sale of the above land by and between EL PASO DEVELOPMENT COMPANY and G. PHIL BERRYMAN, TRUSTEE, which Earnest Money Contract provided for a cash sale and was dated February 2, 1978.

The new contract provided that Berryman was now to pay $6,172.84 per acre for the land rather than the initial agreed upon price of $4,500.00 per acre. The evidence was undisputed that the land had not increased in value. Appellants did not contend in the trial court nor do they contend on appeal that the land increased in value during the negotiations. Appellants' sole defense to the allegation of usury was that of time price differential. There was evidence offered, although conflicting, that El Paso Natural Gas Company wanted a rate of return of 26 percent on its investment before taxes. Scott Turner, a CPA who testified for Berryman, said that, in his opinion, appellants were treating the sale price as $7,293,609.00 rather than the $10,000,000.00 amount that appeared on the note and then determining what kind of return they would have on the loan. In addition, the credit contract did not specifically denominate any time price differential as required by art. 5069-1.01(a). The credit contract was the contract upon which the property was closed on August 22, 1978.

After purchasing the property, Berryman failed to pay the first installment of $1,000,000.00 which was due August 22, 1979. He also failed to make the $1,000,000.00 payment due on August 22, 1980. A modification agreement was entered into on September 4, 1980. At this time the interest on the note was raised from 8 percent to 10 percent. In March, 1982, the parties again modified their agreement to increase the interest rate to 12 percent. Berryman paid approximately five million dollars to El Paso Development in early 1983, bringing the total amount paid to El Paso Development to over $9,000,000.00, and executed a new note for $4,572,694.14. Berryman made only one payment on this note.

In August, 1986, Berryman filed a lawsuit against the El Paso companies claiming usury. He contended that the $10 million credit price on the July 20, 1978 note included hidden usurious interest on the original $7,293,609.00 loan. Appellants filed an answer alleging as a defense to the charge of usury that the increase in price in the contract of July 20th represented a time price differential. They did not allege or attempt to prove that the credit contract of July 20th was a new, separate or independent contract. The jury returned a verdict, finding that the $10,000,000.00 sales contract contained interest in the amount of $2,706,391.00, that El Paso Development Company was estopped to assert the statute of limitations and that both a cash price and a credit price were not offered in the negotiations for the purchase of the property.

■ The test for alleged usury is not concerned with which party might have originated the alleged usurious contract. *First State Bank of Bedford v. Miller,* 563 S.W.2d 572 (Tex.1978); *Tanner Development Co. v. Ferguson,* 561 S.W.2d 777 (Tex.1977).

■ Time price differential is a specific exception to the usury laws. It is an affirmative defense to the charge of usury. The appellants had the burden to prove that the July 20th contract contained a time price differential. As stated by this Court in *El Paso Development Co. v. Berryman,* 729 S.W.2d 883, 887 (Tex.App.—Corpus Christi 1987, no writ):

> The requirements of a time price differential are that: (1) two prices were offered: (2) the purchaser was aware of both the cash price and time price; and (3) the purchaser knowingly chose the higher time price."

■ The evidence in this case reflects that the only credit offers made during the existence of the cash contract were those made by Berryman in his letters of May 20 and 22 and the addendum proposed in June of 1978, none of which were ever acknowledged or accepted by appellants. The credit contract of July 20, 1978, specifically states that the cash contract had terminated. Berryman was offered only one contract at a time, first the cash contract, then the credit contract. He had no alternatives or options at the time he signed the credit contract of July 20th. The cash contract had terminated at the time he was offered the credit contract. There was no way he could have "knowingly chosen the higher time price."

■ Additionally, Article 5069–1.01(a) provides that:

> the term (interest) shall not include any time price differential *however denominated* arising out of a credit sale.

Thus, if there is a credit sale, it appears that it was the intent of the legislature that the time price differential appear in the credit contract. It is apparent that the reasoning behind the legislature's provision was to avoid the exact situation present in this case. If the time price differential had been denominated in the credit contract between Berryman and El Paso Development, which it was not, then the exception in Section 5069–1.01(a) would have prevailed. However, where the parties agreed that the land value has not increased but that the credit price is more than $2.7 million over the cash price, then there was either a time price differential or usury. The jury determined that under all of the evidence presented that the increase in price was usurious. The evidence was sufficient to support the jury findings. Appellants' first two points of error are overruled.

■ By appellants' third point, they argue that the trial court reversibly erred in excluding Berryman's 1978 partnership tax return. They argue that the tax return reflected interest on the note of $276,-392.14 rather than the $2.7 million Berryman now claims as usurious interest. Appellants claim the tax return was relevant to show that Berryman knew the credit price was a time price differential.

We agree with appellants' authorities which state that tax returns are admissible as party admissions and for impeachment. However, the contract in question called for a $10 million purchase price at 8 percent interest. Appellee made a $1.5 million down payment in 1978. The interest claimed reflects a proper amount for the amount of interest reflected on the note. It seems illogical that Berryman would have reported to the Internal Revenue Service hidden interest paid on the note. We believe the trial court did not err in refusing to admit the evidence. However, if it was in error, it certainly did not amount to a denial of appellants' rights calculated to cause and probably causing the rendition of an improper verdict. Tex.R.App.P. 81(b)(1). We overrule appellants' third point of error.

Appellants argue in their fourth point of error that the trial court erred in refusing to submit their requested issue concerning waiver. The tendered issue read:

> Did Mr. Berryman waive his right to assert the usury claim as a result of his conduct in any of the renegotiations of the 1978 promissory note with El Paso Development?

■ Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *Baker Marine Corp. v. Weatherby Engineering Co.*, 710 S.W.2d 690, 693 (Tex.App.—Corpus Christi 1986, no writ); *Burton v. National Bank of Commerce*, 679 S.W.2d 115 (Tex.App.—Dallas 1984, no writ). It is a voluntary act and implies an election to dispense with something of value or to forego some advantage which might have been demanded or insisted upon. *Bluebonnet Oil & Gas Co. v. Panuco Oil Leases, Inc.*, 323 S.W.2d 334 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.). Waiver generally occurs only when one intentionally relinquishes a known right. *Smith v. City of Dallas*, 425 S.W.2d 467, 469 (Tex. Civ.App.—Dallas 1968, no writ). In the absence *of an express renunciation of a*

known right, a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct, the opposite party has been misled to his prejudice into an honest belief that such waiver was intended or assented to. *Lewis v. Smith,* 198 S.W.2d 598 (Tex.Civ.App.—Fort Worth 1946, writ dism'd).

■ The trial court is required to submit questions to the jury which are raised by the pleadings and evidence. Tex.R.Civ.P. 278. Appellants argue that Berryman's eight years delay in filing suit, in the face of his testimony that he believed the interest on the note was high as early as 1978, is some evidence of waiver requiring submission of the issue. Appellants also claim that by executing the several modification and reinstatement agreements expressly affirming that the interest rate did not exceed the maximum allowable rate, Berryman acted inconsistently with an intention to rely on a usury claim. We agree with appellants that this evidence constitutes some evidence of an intention inconsistent with claiming usury. However, it is not evidence that Berryman waived a known right. There was no evidence of an express renunciation of his usury claim. Likewise, there is no evidence that El Paso believed that Berryman was waiving his right to assert a usury claim. We agree that it appears Berryman was willing to forego the claim as long as El Paso was working with him, and decided only to pursue a usury claim when foreclosure was imminent. However, this does not constitute evidence of waiver. We overrule appellants' fourth point of error.

Appellants allege in their fifth and sixth points of error that there was no evidence or factually insufficient evidence to support the jury's findings that they had waived and were estopped to assert the statute of limitations. In the March 30, 1983, reinstatement agreement the parties agreed that the statute of limitations on the note and its installments should be tolled and extended. While the inclusion of the written waiver was surely intended to benefit appellants, it is not limited by its terms to

preserve only El Paso's right to enforce the obligations under the original note.

■ A party may be estopped to assert the defense of limitations if his statement or conduct induced the plaintiff to refrain from commencing his suit within an applicable time period. *Walker v. Hanes,* 570 S.W.2d 534, 540 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). The contractual agreement is some evidence from which the jury could have found estoppel.

In addition to the agreement, the evidence presented at trial showed that Berryman purchased the raw acreage in question contemplating a major development project. Berryman began experiencing problems developing the property. Montgomery told Berryman that he had experienced similar problems with other purchasers and had been able to work them out with the borrower without foreclosure. Even after the reinstatement agreement in 1983, Berryman testified that he received assurances from Montgomery that they were not going to foreclose even though he was in default. Berryman continued to develop the property. Berryman paid appellants $5,000,000.00 and spent an additional three to four million dollars to construct a golf course on the property.

In 1985, Glacier Park Company, a development company, took over Montgomery's responsibilities. This was a result of Burlington Northern's takeover of El Paso. It was after this takeover that a decision was made to foreclose. During that general period of time, Corpus Christi was designated as a city for the Homeport Project. The reassurances that El Paso was going to continue to work with Berryman and Berryman's reliance on them which was evidenced by his continued development of the project constitutes sufficient evidence of waiver and estoppel to support the jury's verdict. We overrule points five and six.

■ Appellants claim in their seventh point of error, that the trial court erred in awarding Berryman both the return of his principal payments and the cancellation of the deed of trust as this amounts to a double recovery. Tex.Rev.Civ.Stat.Ann.

art. 5069–1.06(1), (2) (Vernon 1987) provides:

(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest contracted for charged or received, such usurious interest being the amount of the total interest contracted for, charged, or received exceeds the amount of interest allowed by law, and reasonable attorney fees fixed by the court except that in no event shall the amount forfeited be less than Two Thousand Dollars or twenty percent of the principal, whichever is the smaller sum; provided, that there shall be no penalty for any usurious interest which results from an accidental and bona fide error.

(2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; provided further that any such person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine of not more than One Thousand Dollars. Each contract or transaction in violation of this section shall constitute a separate offense punishable hereunder.

The trial court here ordered the return of principal as authorized by art. 5069–1.06(2) as well as cancellation of the deed of trust. Berryman plead for relief both under the statute and common law.

Appellants claim that the statutory remedy does not provide for cancellation of the deed of trust and the effect of appellee's attempt to recover under common law awards damages twice for the same injury.

In *Danziger v. San Jacinto Savings Association,* 732 S.W.2d 300, 304 (Tex.1987), the debtors had asserted a common law claim for return of interest paid and cancellation of interest not yet paid as well as various statutory claims. The Supreme Court held that the debtors properly pleaded and preserved their common law claim, entitling them to recover all interest. The Court, in *Danziger,* allowed for the forfeiture of twice the amount of interest contracted for, charged or received, in addition to a common law action for return of interest paid and cancellation of interest not paid. On the other hand, in *Tri–County Farmer's Co-op v. Bendele,* 641 S.W.2d 208, 210 (Tex.1982), the Court held that the debtor was not entitled to the dollar amount of his debt as penalty, in addition to cancellation of the debt because this was, in effect, a double forfeiture not contemplated by statute. It appears, however, that in *Bendele* the debtor sought only statutory remedies under the penalty provisions.

Here, because both common law and statutory causes of action were pleaded, the trial court did not err in its award. We overrule appellants' seventh point of error.

■■■ By their eighth point of error, appellants claim that the judgment must be reformed because it awards recovery on the down payment, which is not principal. In the context of forfeiting principal as a statutory penalty for usury, "principal" means that amount upon which interest is charged or earned. *Steves Sash & Door Co. v. Ceco Corp.,* 751 S.W.2d 473, 474 (Tex.1988).

■■■ Appellants claim that no interest was charged on the $1,500,000.00 appellee paid as a down payment. The appellees claim that the $10,000,000.00 contract contained hidden interest which was so intertwined that the amount was properly awarded. We agree. Here, the down payment was included in the total amount held to be usurious. The jury found that the $10,000,000.00 contract contained more than 2 million in hidden interest. This is unlike the open account situation discussed in *Steves,* in which excessive interest was charged on a portion of the account rather than the entire original balance. *Id.* at 475. Because of the nature of the transaction involved, we find that the down payment was properly considered principal for penal-

ty purposes. We overrule appellants' eighth point of error.

Appellants complain in their ninth point of error that the trial court miscalculated excess interest in determining penalty damages. The trial court awarded the sum of $6,548,772.80 representing twice the amount of excess interest for which El Paso Development Company contracted, charged and or received.[1] The excess interest should have been calculated based upon the leveling principles set forth in *Tanner Development Co. v. Ferguson*, 561 S.W.2d 777 (Tex.1977). We request the parties submit a recalculation of excess interest, in accordance with this opinion. Otherwise, we will remand to the trial court for purposes of recalculation of excess interest. We sustain appellants' ninth point of error.

By their tenth point of error, appellants argue that they are entitled to judgment for the balance owed under the March 30, 1983, renewal note or alternatively that the trial court erred in failing to subtract the amount of the note from Berryman's recovery. No issues were requested or submitted to the jury on this note. The note was a renewal of the usurious note. We overrule appellants' tenth point of error.

■ The appellants complain, by their eleventh point of error that the trial court erroneously awarded Berryman "twice the excess interest" charged and prejudgment interest on the principal and interest contracted for, charged and received from July 20, 1978, until judgment. In *Steves Sash & Door Co. v. the Ceco Corp.*, 751 S.W.2d at 476, the Supreme Court held that prejudgment interest is not recoverable on usury penalty damages. Prejudgment interest was not properly recoverable. Appellants' eleventh point of error is sustained and the award of prejudgment interest is deleted from the final award.

By appellants twelfth point of error, appellants state that the trial court erroneously awarded Berryman post judgment interest at 10 percent compounded daily.

We agree with appellants that the post judgment interest should have been compounded annually, but we find appellants' complaint is waived. *See* Tex.Rev.Civ.Stat. Ann. art. 5069–1.05 § 3(a) (Vernon Supp. 1988). The trial court was never apprised of its error and given an opportunity to correct it. This error is not fundamental. *See Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex.1982). We overrule appellants' twelfth point of error.

By their thirteenth point of error, appellants assert that the trial court erred in rendering a joint and several judgment against El Paso Development and El Paso Natural Gas. The judgment was based on what appellants claim was an erroneous refusal to submit issues to the jury inquiring whether El Paso Development was the alter ego or agent of El Paso Natural Gas. The trial court ruled that it was granting Berryman's motion for directed verdict on alter ego and agency.

■ In reviewing the propriety of the trial court's action, we look at the evidence most favorably to the party against whom the motion was granted and disregard all contrary evidence and inferences. *Henderson v. Travelers Insurance Co.*, 544 S.W.2d 649, 650 (Tex.1976). The various bases for disregarding the corporate fiction involve questions of fact. *Castleberry v. Branscum*, 721 S.W.2d 270, 277 (Tex.1986). Except in special circumstances, fact questions should be determined by the jury. *Id.*

■ Alter ego applies when there is such unity between the corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice. *Castleberry*, 721 S.W.2d at 272. We look to the total dealings of the corporation, including the degree to which corporate formalities have been followed, the amount of financial interest, and the ownership and control the individual maintains over the corporation. *Id.* Generally, a court will

---

1. The 1979 amendment to Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(1) substituted "three times" for "twice".

not disregard the corporate fiction and hold a corporation liable for the obligations of its subsidiary except where it appears the corporate entity of the subsidiary is being used as a sham to perpetrate a fraud, to avoid liability, to avoid the effect of a statute, or in other exceptional circumstances. *Lucas v. Texas Industries, Inc.,* 696 S.W. 2d 372, 374 (Tex.1984).

 There was evidence before the trial court that El Paso Development and El Paso National Gas were separate corporations. From 1978 to 1983, El Paso Development and El Paso Natural Gas were sister companies. Separate books and records were kept. El Paso Natural Gas charged El Paso Development for accounting and legal services. All agreements were between Berryman and El Paso Development rather than El Paso Natural Gas. We find that there was some evidence of the absence of separateness, so as to submit the issue to the jury. Appellants' thirteenth point of error is sustained.

Appellee argues by cross point that he is entitled to three times the amount of usurious interest in accordance with the 1979 amendment to Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(1) rather than two times the amount. Plaintiff's petition pleaded and prayed for twice the amount of interest because that was the law at the time his pleadings were filed. In 1979, the legislature substituted "three times" for twice the amount of usurious interest contracted or received if the interest exceeds the amount of interest allowed by law. The application language of the statute states,

This Act shall be applicable to all claims of forfeiture made after the effective date of this Act, but with respect to claims of forfeiture in litigation pending at such effective date, the amount forfeited shall be determined under the provisions of this subsection as originally enacted.

The claim of forfeiture here is governed by the pre 1979 amendment. The trial court was correct in assessing a double rather than a triple penalty. Appellee's cross-point is overruled.

The judgment of the trial court is reversed and remanded as to El Paso Natural Gas Company. The award of prejudgment interest is deleted. The parties are ordered to submit a recalculation of excess interest to this Court within thirty days. If this recalculation is not received, the case will be remanded for that purpose. The judgment against El Paso Development Company is otherwise AFFIRMED.

## SUPPLEMENTAL OPINION

In our original opinion, we requested the parties to submit a post-opinion recalculation of excess interest. All parties have complied with our request. The parties have reached different conclusions concerning the maximum interest allowed by law.

 Appellee's and appellants' calculations differ in that El Paso does not reduce the principal balance in accordance with the contract, while Berryman utilizes the declining balance according to the terms of the contract for his calculation. El Paso calculates the excess interest as $2,866,-991.00, while Berryman's excess interest calculation is $3,236,621.00.

The penalties provision of the statute provides that any person who contracts for charges or receives interest which is greater than the amount authorized shall forfeit three times the amount of usurious interest contracted for, charged, or received. *See* Tex.Rev.Civ.Stat. art. 5069–1.06 (Vernon 1987).[1] We believe that the maximum allowable interest should be calculated based upon terms of the contract at its inception and that appellee's calculation, based upon a declining balance is the correct method of calculation. We hold that the correct amount of excess interest is $3,236,621.00.

We reform the judgment to reflect excess interest at $6,473,242.00, which represents twice the amount of excess interest contracted for, rather than $6,548,772.80, which was the amount calculated by the trial court. *See Esparza v. Nolan Wells*

---

1. The statute was changed in 1979 to substitute three times for twice.

*Communications, Inc.,* 653 S.W.2d 532 (Tex.App.—Austin 1983, no writ).