

# NUMBER 13-16-00273-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**JAMES BURKHOLDER, MIKE MORGAN, JOE URBANEK, MELISSA GREBB, RUTHIE EWERS, BENJAMIN BUJANDA, FRED CORDOVA, AND LAGUNA BAY CONDOMINIUM ASSOCIATION, INC.,** Appellants,

**v.**

**TIMOTHY WILKINS,** Appellee.

---

### On appeal from the 445th District Court of Cameron County, Texas.

---

# OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Opinion by Justice Rodriguez**

This appeal concerns the trial court's order granting a temporary injunction in favor

of the appellee Timothy Wilkins, who owns a unit in the Laguna Bay Condominiums on

South Padre Island. The injunction restrained the appellants—the Laguna Bay Condominium Association, Inc. and several of its board members[1] (collectively, the COA)—from collecting a special assessment of $91,316 from Wilkins and, by extension, from foreclosing on his condo. This sum allegedly represented Wilkins's share of the cost to restore the Laguna Vista complex in the wake of Hurricane Dolly.

The COA brings this accelerated, interlocutory appeal of the temporary injunction. By its first and second issues on appeal, the COA argues that Wilkins failed to show two elements required to justify a temporary injunction—specifically, showing that in the absence of an injunction, he would suffer irreparable injury for which he had no adequate remedy at law. By a third issue, the COA argues that the trial court erred in assessing the "balance of equities" within the injunction calculus. We affirm.

## I. BACKGROUND

In 2013, Wilkins filed a separate lawsuit against the COA after his condo allegedly sustained water damage during Hurricane Dolly. Wilkins reached a settlement agreement with the COA (the Settlement).[2]

Wilkins filed this lawsuit in 2015, principally alleging that the COA had breached the Settlement by failing to make repairs to his unit within six months of a given date, as the Settlement required. Wilkins contended that rather than repairing his unit, the COA instead repaired several other units and common areas in the complex and then sent him

---

[1] The appellants include the Laguna Bay Condominium Association, Inc.; its then-current board members James Burkholder, Mike Morgan, Joe Urbanek, Melissa Grebb, and Ruthie Ewers; and its former board members Benjamin Bujanda and Fred Cordova.

[2] Another condo-owner named Greggory Kunkle filed suit as Wilkins's co-plaintiff in the 2013 litigation. Kunkle participated in the Settlement, but he did not join Wilkins in this suit.

a special assessment of $91,316 for the cost of the repairs.  The Settlement reads in

relevant part:

> A.    The [COA] agrees to make the repairs, and further investigations, called for, and any additional repairs recommended as a result of the further investigations, in July 9, 2013, Final Report of [WJE Engineering] within 36 months of the date of this Settlement Agreement, except if that becomes impossible by force majeure or by Acts of God.  However, the prioritization and sequence of the work, and the selection of available options, shall be up to the discretion of the [COA] Board after consultation with [WJE Engineering].  Notwithstanding the foregoing, any repairs that the [COA] Board and the Homeowners deem economically unfeasible do not have to be made.

> B.    Notwithstanding A above, within 6 months of the date of the approval of this Settlement Agreement by the Homeowners, if such approval is obtained, the [COA] shall:

>> 1.    Secure a report from Bob Fudge, PE, on what repairs are needed to repair leaks to Plaintiffs' Units; and

>> 2.    Effect such repairs at the [COA]'s expense.

>> . . . .

> C.    The [COA] will specify to Plaintiffs, within 60 days of the date of this Settlement Agreement, which available sliding glass doors Plaintiffs may use on their Units.

> . . . .

> G.    Plaintiffs shall be responsible for their pro-rata share of any assessments required for the [COA] to comply with No.'s A, B & C above.

The record discloses that the homeowners voted to approve the Settlement in

2013 and the report of professional engineer Bob Fudge was delivered on December 23,

2013.  However, it is undisputed that the COA did not complete repairs to Wilkins's unit

3

within six months of December 23 and that the COA had not repaired his unit as of the filing of this appeal. According to Wilkins, the continued presence of moisture in the unsealed and unrepaired condo had caused further water damage and the development of mold, which prevented Wilkins from living in or renting out the condo. Wilkins also contends that the COA never indicated which sliding glass doors would meet the COA's specifications pursuant to section D. Wilkins refused to pay the COA's special assessment of $91,316 for the common-area repairs, and he began to withhold COA dues. In response, the COA allegedly attempted to foreclose on Wilkins's condo. Wilkins then filed this suit, alleging breach of contract, breach of fiduciary duty, and multiple forms of fraud.

Soon after he initiated this suit, Wilkins submitted an application for temporary injunction seeking to prevent the COA from collecting the special assessment or foreclosing on his condo, among other things.[3] In support of his application for temporary injunction, Wilkins submitted evidence including his own affidavit, the Settlement, the special assessment, photos of water damage and mold, discovery responses, Fudge's engineering report, and a proposal by an environmental remediation company to address mold and moisture problems.

In response, the COA did not dispute that it had agreed to repair Wilkins unit and had made other commitments in the Settlement. The COA instead argued that when it entered the Settlement, it had not realized the extent of the necessary repairs; engineers

---

[3] Specifically, Wilkins sought to enjoin the COA from conducting any further repairs before his unit was repaired. The trial court denied this proposal, and on appeal, Wilkins does not urge any error concerning this denial.

had subsequently determined that the complex would need to be repaired, in sequence, from the top to the bottom. Since Wilkins's unit was on the second floor out of seven, the COA urged that it was impracticable to adhere to the Settlement. The COA contended that Wilkins should instead be made to follow this top-down repair plan, which had purportedly been adopted by all of the twenty-nine other condo owners. Wilkins's share of this repair plan would be $91,316. The COA offered no evidence to support these arguments.

After the hearing, the trial court granted a temporary injunction and incorporated findings of fact into its order. Among other things, the court found that the COA intended to engage in collection efforts including a foreclosure sale on Wilkins's real property and that Wilkins would likely succeed on the merits of his suit. The court also found that if the injunction were not granted, then the COA's proposed course of action would tend to render any judgment in this case ineffectual, would threaten irreparable injury, and would leave Wilkins with no adequate remedy at law. The court also found that the injunction would be consistent with preservation of the status quo, the public interest, and the balance of equities—specifically, that Wilkins's potential injury if the injunction were erroneously denied would outweigh any injury to the COA that could occur if the injunction were erroneously granted. This interlocutory appeal followed.

## II. STANDARD OF REVIEW

We review the trial court's decision to grant a temporary injunction for a clear abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam). A court may abuse its discretion

by ruling "arbitrarily, unreasonably, . . . without regard to guiding legal principles, or . . . *without supporting evidence.*" *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex. 1998) (emphasis added) (internal quotations omitted). As to ruling "without supporting evidence," the trial court generally does not abuse its discretion when its decision is based on conflicting evidence and some evidence in the record reasonably supports the trial court's decision. *Butnaru,* 84 S.W.3d at 211. In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we ask: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in the application of its discretion. *Gonzalez v. Villarreal,* 251 S.W.3d 763, 774 n.16 (Tex. App.—Corpus Christi 2008, pet. dism'd); *In re TDC,* 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied).

### III. SUFFICIENCY OF THE EVIDENCE TO SUPPORT TEMPORARY INJUNCTION

By its first and second issues on appeal, the COA argues that Wilkins submitted insufficient evidence as to whether, in the absence of an injunction, he would face irreparable injury for which he would have no adequate remedy at law. Specifically, the COA contends that Wilkins submitted only one piece of evidence which could speak to these points—Wilkins's own affidavit—and that this form of evidence is not acceptable in the context of a temporary injunction hearing. In support of this contention, the COA cites *Millwrights Local Union Number 2484 v. Rust Engineering Company* for the proposition that affidavits may not be used to support a temporary injunction, absent agreement by the parties that affidavits are allowable. 433 S.W.2d 683, 686 (Tex. 1968).

6

In response, Wilkins points out that there are two exceptions to this rule which may allow an affidavit to serve as valid proof for a temporary injunction. The first applies where the non-movant fails to object to the use of an affidavit. The second occurs where the affidavit is formally entered into evidence at the temporary injunction hearing. Wilkins contends that both exceptions apply here, allowing the trial court and this Court to consider his affidavit. Wilkins's affidavit attests that without an injunction, the COA will proceed with collection efforts which, as the trial court found, will include foreclosure. He contends that his affidavit—and the foreclosure it describes—provide a sufficient basis to find irreparable harm with no adequate remedy at law, justifying a temporary injunction.

## A.      Applicable Law

Section 51.014(a)(4) of the civil practice and remedies code permits an interlocutory appeal of a district court's order granting a temporary injunction. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West, Westlaw through 2015 R.S.); *Shamoun & Norman, LLP v. Yarto Intern. Grp., LP*, 398 S.W.3d 272, 280 (Tex. App.—Corpus Christi 2012, pet. dism'd) (op. on reh'g).

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *See id.*; *Shamoun & Norman*, 398 S.W.3d at 282. An injury is irreparable if there is no adequate remedy at law—i.e., if the injured party cannot be adequately compensated in damages or if the damages

7

cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Shamoun & Norman*, 398 S.W.3d at 282*.*

"Generally, money damages may be inadequate to compensate an injured party for the loss of property deemed to be legally 'unique' or irreplaceable." *N. Cypress Med. Ctr. Operating Co. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding). Every piece of real estate is unique, and foreclosure can be an irreparable injury for which there is no adequate remedy at law. *El Paso Dev. Co. v. Berryman*, 729 S.W.2d 883, 888 (Tex. App.—Corpus Christi 1987, no writ); *N. Cypress Med. Ctr.*, 296 S.W.3d at 175; *Lavigne v. Holder*, 186 S.W.3d 625, 629 (Tex. App.—Fort Worth 2006, no pet.); *see Butnaru*, 84 S.W.3d at 209. It follows that "a trial court may grant equitable relief when a dispute involves real property." *Butnaru*, 84 S.W.3d at 211.

In the context of a request for temporary injunctive relief, the party applying for the injunction has the burden to offer some evidence of each requisite element for a temporary injunction. *Sargeant v. Al Saleh*, __S.W.3d__, __, No. 13-15-00327-CV, 2016 WL 362772, at *5 (Tex. App.—Corpus Christi Jan. 28, 2016, orig. proceeding); *Wyly v. Pres. Dall.,* 165 S.W.3d 460, 465 (Tex. App.—Dallas 2005, orig. proceeding); *see also In re Tex. Natural Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002) (orig. proceeding). In the absence of an agreement between the parties, the proof required to support a judgment issuing a temporary injunction generally may not be made by affidavit. *Millwrights Local*, 433 S.W.2d at 686; *Shamoun & Norman*, 398 S.W.3d at 283. However, where the party resisting an injunction does not object to the applicant's reliance on affidavit evidence in the trial court, that party may not complain of the affidavit

8

for the first time on appeal. *Ahmed v. Shimi Ventures, LP*, 99 S.W.3d 682, 684 n.2 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing TEX. R. APP. P. 33.1(a)(1)); *see LasikPlus of Tex., PC v. Mattioli*, 418 S.W.3d 210, 221 n.13 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Tigua Gen. Hosp., Inc. v. Feuerberg*, 645 S.W.2d 575, 576 (Tex. App.—El Paso 1982, writ dism'd); *see also Seghers v. Kormanik*, No. 03-13-00104-CV, 2013 WL 3336845, at *4 (Tex. App.—Austin June 26, 2013, no pet.) (mem. op.).

## B. Application

We first take up the COA's assertion that we may not consider Wilkins's affidavit, as well as Wilkins's counterargument that we may consider his affidavit given that the COA did not object to its consideration in the trial court. Our review of the record reveals that the COA lodged no objection to Wilkins's affidavit in the trial court. As such, the COA may not complain of the affidavit for the first time on appeal. *See LasikPlus of Tex.*, 418 S.W.3d at 221 n.13; *Ahmed*, 99 S.W.3d at 684 n.2. We will consider the affidavit as properly offered evidence in support of Wilkins's application for temporary injunction.[4]

The affidavit appears to be the lynchpin of Wilkins's evidence in support of his application for temporary injunction. In his affidavit, Wilkins attested to the background of the case, including the initial lawsuit he filed against the COA, the entry of the Settlement, and the basic terms of the Settlement. He testified that the COA had not satisfied its obligations under the Settlement within the time specified—or within the intervening years—but had nonetheless insisted that he pay a sizeable special

---

[4] Because this exception allows us to consider Wilkins's affidavit, we need not consider the second exception advanced by Wilkins, which concerns situations where affidavits are formally entered into evidence at the temporary injunction hearing. *See* TEX. R. APP. P. 47.1; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

9

assessment for repairs conducted to other areas of the complex.

Most pertinent to this appeal, Wilkins attested that he had refused the special assessment and withheld COA dues, at which point the COA initiated foreclosure proceedings; according to the affidavit, "the [COA] initiated foreclosure proceedings in bad faith, after their prior breach . . . ." As Wilkins points out, this affidavit testimony is consistent with argument by COA's counsel at the temporary injunction hearing, wherein counsel stated that the COA would need to be convinced to agree not to move forward with foreclosure if the injunction were not granted.[5] The record supports the trial court's finding that the COA "intend[ed] to engage in collection efforts against Plaintiff for the collection of $91,316, as set forth in the invoice dated November 1, 2015 (including but not limited to conducting a foreclosure sale on Plaintiff's real property at issue in this cause)."

In sum, the COA did not object to the affidavit, which was the capstone of Wilkins's proof and which summarized all material aspects of Wilkins's other evidence (e.g., Fudge's engineering report, which triggered obligations under the Settlement; the special assessment, which was the predicate for foreclosure, etc.). *See LasikPlus of Tex.*, 418 S.W.3d at 221 n.13; *Ahmed*, 99 S.W.3d at 684 n.2. Taking the affidavit together with Wilkins's other record evidence, we conclude that Wilkins provided the trial court with a sufficient basis upon which to exercise its discretion. *See Gonzalez*, 251 S.W.3d at 774

---

[5] Wilkins asks this Court to construe counsel's statements as a judicial admission that foreclosure would ensue if the injunction were not granted. *See Sepulveda v. Krishnan*, 839 S.W.2d 132, 135 (Tex. App.—Corpus Christi 1992), *aff'd*, 916 S.W.2d 478 (Tex. 1995) (discussing judicial admission). We need not address this argument to reach the conclusion urged by Wilkins. *See* TEX. R. APP. P. 47.1; *Tex. Ass'n of Bus.*, 852 S.W.2d at 444.

n.16; *In re TDC*, 91 S.W.3d at 872.   Wilkins produced competent evidence that in the absence of an injunction, he faced the threat of foreclosure, through which he could irrevocably lose ownership of the bay-front real estate at issue.   *See Butnaru*, 84 S.W.3d at 209; *El Paso Dev. Co.*, 729 S.W.2d at 888.   It follows that by demonstrating the likely loss of unique property, Wilkins made the requisite showing that he faced irreparable injury for which there would be no adequate remedy at law—the only aspect of the temporary injunction elements which is challenged by the COA.   *See Butnaru*, 84 S.W.3d at 209; *El Paso Dev. Co.*, 729 S.W.2d at 888.   We find no abuse of discretion on these facts; rather, this evidence warranted the trial court's order to preserve the status quo pending trial on the merits.   *See Butnaru*, 84 S.W.3d at 204.   We overrule the COA's first and second issues.

## IV.   BALANCE OF EQUITIES

By its third issue on appeal, the COA asserts the trial court erred in concluding that the balance of equities weighed in favor of granting the temporary injunction.   According to the COA, the injunction against the special assessment and foreclosure has the effect of hampering its efforts to repair the building pursuant to its top-down construction plan. The COA contends that on the scales of equity, this hindrance to twenty-nine condo owners would clearly outweigh any harm from the foreclosure of Wilkins's unit.   As previously mentioned, the COA presented no evidence to support its arguments.

### A.     Applicable Law

In considering an application for a temporary injunction, a trial court balances the equities between the parties as well as the resulting conveniences and hardships.

11

*Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 578 (Tex. App.—Austin 2000, no pet.); *see In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002). A trial court may consider whether significant or slight injury would result if the injunction were erroneously denied, and whether significant or slight injury would result if the injunction were erroneously granted. *TFW Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 162 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Coastal Marine Serv. of Tex., Inc. v. City of Port Neches*, 11 S.W.3d 509, 515 (Tex. App.—Beaumont 2000, no pet.). We review the trial court's assessment of the balance of equities under an abuse of discretion standard, and we will reject an evidentiary challenge if the decision is based on conflicting evidence and some evidence in the record reasonably supports the trial court's decision. *See Butnaru*, 84 S.W.3d at 211; *Layton v. Ball*, 396 S.W.3d 747, 753–54 (Tex. App.—Tyler 2013, no pet.) (applying *Butnaru*'s standard to a balance of the equities determination); *Universal Health Servs.*, 24 S.W.3d at 579 (same).

## B. Application

Here, Wilkins introduced some evidence that foreclosure would likely ensue if the injunction were not granted, potentially impairing his rights in an irreparable way. By comparison, the COA introduced no evidence to substantiate the harm that it would allegedly suffer if the injunction were erroneously granted. On appeal, the COA can only cite to its pleadings and to the argument of its counsel during the hearing for support. "[R]emarks of counsel during the course of a hearing are not competent evidence unless the attorney is actually testifying." *Shamoun & Norman*, 398 S.W.3d at 283; *Bay Fin. Sav. Bank, FSB v. Brown*, 142 S.W.3d 586, 590 (Tex. App.—Texarkana 2004, no pet.).

12

The COA thus provided no evidence to freight its side of the balance of equities, whereas Wilkins introduced evidence that he would likely suffer significant injury if the injunction were erroneously denied. *See TFW Mgmt.*, 162 S.W.3d at 575; *Coastal Marine*, 11 S.W.3d at 515. Given that some record evidence reasonably supports the trial court's assessment of the balance of equities, we cannot conclude that the trial court abused its discretion. *See Butnaru*, 84 S.W.3d at 211; *Layton*, 396 S.W.3d at 753–54. We overrule the COA's third issue.

## V. CONCLUSION

We affirm the order of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
20th day of October, 2016.

13