

# NUMBER 13-18-00215-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI–EDINBURG

---

DENNIS W. BERRY; MARVIN G. BERRY;
BAY, INC.; BERRY GP, INC.,
D/B/A BERRY CONTRACTING;
AND BERRY CONTRACTING,
D/B/A BAY LTD.,                                                      Appellants,

v.

KENNETH L. BERRY, INDIVIDUALLY;
AND KENNETH L. BERRY, IN A DERIVATIVE
CAPACITY FOR SKYEAGLE, INC.,                                         Appellees.

---

On appeal from the County Court at Law No. 3
of Nueces County, Texas.

---

# MEMORANDUM OPINION

Before Justices Benavides, Hinojosa, and Perkes
Memorandum Opinion by Justice Perkes

This interlocutory appeal concerns the trial court's temporary injunction order in favor of appellees, Kenneth L. Berry (Kenneth), individually and in a derivative capacity for Skyeagle, Inc. (Skyeagle), enjoining appellants, Dennis W. Berry (Dennis); Marvin G. Berry (Marty); Bay, Inc. (Bay); Berry GP, Inc., d/b/a Berry Contracting; and Berry Contracting, d/b/a Bay Ltd. from dissolving Skyeagle, obligating Skyeagle to pay debts of or transfer funds to any Defendant-owned entities, and indemnifying Skyeagle in an unrelated suit out of the 214th District Court. By two issues, appellants contend that the trial court abused its discretion by granting the temporary injunction because appellees failed to establish a right of relief under Texas Civil Practice and Remedies Code § 65.011 and alternatively, under Texas Business Organizations Code § 2.104. TEX. CIV. PRAC. & REM. CODE § 65.011; TEX. BUS. ORGS. CODE § 2.104. We reverse.

## I. BACKGROUND

In 1979, Kenneth and his brothers, Dennis and Marty (Defendant Directors), formed Skyeagle. The three brothers are the sole shareholders, each owning one-third of the company's shares. Kenneth previously held the position as Skyeagle's president,[1] while Dennis and Marty served as vice-president and secretary, respectively. Defendant Directors also own controlling interests in other companies, including Berry Contracting and Bay; although Kenneth never owned any interest in either company, Kenneth was the former vice-president for Bay.

In March 1994, Skyeagle purchased a railway easement (the Easement) in Nueces County, Texas from the United States for $175,000. This Easement is Skyeagle's sole

---

[1] The parties dispute whether Kenneth resigned, was fired in 1997, or was voted out of his position by his brothers at a shareholder's meeting on February 20, 2018.

asset. In May 1995, Bay and the Texas Mexican Railway Company (TM) entered into a transportation contract in which TM agreed to transport aggregate products for Bay. Three months later, Bay and TM entered into an extension of the transportation contract, during which Bay agreed to a "transfer or conveyance of the [Easement]" to TM, upon the satisfaction of certain conditions laid out in the contract. The contract was signed by Kenneth in his capacity as Bay's vice-president. Skyeagle was not a party to the contract. Kenneth's relationship with Defendant Directors deteriorated over time, and in October 2015, TM filed suit in the 214th District Court against Bay and Skyeagle, alleging breach of contract.[2]

On February 12, 2018, Kenneth received a "Notice of Special Meeting of the Shareholders of Skyeagle, Inc." (Shareholder's notice). The Shareholder's notice included items that "shall be discussed" by the shareholders and upon which "the shareholders of the Company may vote." These items consisted of:

1. The existence and repayment of indebtedness owed by [Skyeagle] to Berry Contracting, Inc., [Bay], Lone Star Equipment, Inc., Basic Equipment Company, and/or any related or affiliated company.

2. Payment of interest on any of the debts determined under 1 above to exist.

3. The existence and substance of existing litigation involving [TM, Bay, and Skyeagle].

4. The possibility of resolution of the litigation referenced in 3 above and the granting of authority to accomplish same.

5. The source of funds for the company to pay attorney's fees or to repay Bay, Inc. or related entities for the payment of attorney's fees on behalf of [Skyeagle] with regards to the litigation.

---

[2] TM alleges that Bay failed to transfer the Easement pursuant to the contract's terms and seeks specific performance against Bay and Skyeagle.

6. Confirmation of the existence and terms of defense and indemnity obligations of [Skyeagle] towards its directors and officers.

7. The appointment of officers.

8. The possibility of dissolution of [Skyeagle].

Kenneth claims that he first learned of the TM lawsuit against Bay and Skyeagle upon receiving the Shareholder's notice. On February 20, the day the shareholder meeting was scheduled to take place, Kenneth filed an application for a temporary restraining order (TRO) and temporary injunction against the Defendant Directors, alleging[3] that the Defendant Directors breached their fiduciary duty to Skyeagle and to Kenneth as a shareholder. On February 22, the TRO was granted.

## A. Temporary Injunction Hearing

On March 5, the morning of the temporary injunction hearing, Defendant Directors filed a "Plea in Abatement and Objection to the Court's Jurisdiction." In part, Defendant Directors argued that the 214th District Court retains "dominant jurisdiction over the easement issue and the transferring thereof;" therefore, Kenneth is barred from any attempt at enjoining Defendant Directors from the use of the Easement and any mandated enjoinment must not include the Easement.

The trial court thereafter held a joint hearing on the temporary injunction and plea in abatement. The hearing was recessed, and the court resumed on April 3. At the start of the April 3rd hearing, the court orally granted Defendant Director's plea in abatement[4]

---

[3] Appellees also allege corporate usurpation; however, usurpation is not raised in the application for temporary injunction nor in the injunction order, so it is not before this Court.

[4] The trial court issued its written order on April 5, declaring "that all issues regarding the rail easement are abated and should be addressed in the 214th District Court."

before accepting additional testimony regarding the temporary injunction.

### 1. Kenneth's Testimony

Kenneth maintained that the Shareholder's Notice was evidence that Defendant Directors intended to (1) dissolve Skyeagle and (2) make Skyeagle liable as a guarantor of the debts and obligations of Bay and Berry Contracting. *See* TEX. BUS. ORGS. CODE ANN. § 2.104(b)(2) (providing that a domestic entity may make a guaranty of the indebtedness of another if the guaranty may reasonably be expected to benefit the entity); *id.* § 2.104(c)(2) (providing that a shareholder may request to enjoin a proposed guaranty on the ground that the guaranty cannot reasonably be expected to benefit the entity).

According to Kenneth, Skyeagle purchased an easement directly linked to what is now the Kansas City Southern Railroad, and Bay should "have to come to Skyeagle and make a deal for that asset" if Defendant Directors wished to use Skyeagle's Easement to fulfill its obligation to TM. Kenneth argued Defendant Directors "want to give Skyeagle's assets to [TM]" for the sole benefit of Bay, a company Kenneth has no ownership in, and to the detriment of Skyeagle, which would lose its only asset.

Kenneth also took issue with Skyeagle potentially paying Bay's attorney's fees in its suit against TM because both companies are represented by the same firm although their interests are averse. Kenneth argues, in relevant part:

> [Bay] is a party to a contract with [TM] that Skyeagle is not. Skyeagle got sued because of a contract that it's not a party to. Therefore, they're adverse. The contract between [Bay] and [TM] allegedly talks about assets that are owned by Skyeagle, and Skyeagle should have it's [sic] own separate independent lawyer to defend its position against allegation[s] from either [Bay] or [TM] in this case.

Kenneth complained that losing the Easement or dissolving the company would result in "worthless" shares and "no company to conduct business." Kenneth conceded that although Skyeagle is not bonded and lacks a prime contract, Skyeagle could become insured for business: "[Skyeagle] has a perfect safety record today. So there's nobody in the planet that has a better safety record than Skyeagle." Kenneth suggested Skyeagle could perform subcontracting services for Bay:

> There's dozens of ways Skyeagle can go to work. But certainly given the ten-year and time that my two brothers have had running it as officers and directors, it should have insurance, it should have bonding capacity, it should have the work, it should have profits. But there's absolutely no reason that Skyeagle can't do work.

## 2. Defendant Directors Testimony

Defendant Directors countered that Kenneth was President of Skyeagle for a substantial duration of the company's existence, and apart from incurring a $176,000 debt in the form of the Easement, Kenneth is the reason the company did not prosper.

[Counsel:] How many notices of meetings in the 35 years that Kenneth Berry was president of Skyeagle did you receive from Kenneth Berry?

[Marty:] Zero.

[Counsel:] How many meetings of Skyeagle did Kenneth Berry call while he was president of Skyeagle?

[Marty:] Zero.

. . . .

[Counsel:] In the years that Kenneth Berry was president of Skyeagle, how many times did he bid on work to your knowledge for Skyeagle?

[Marty:] Never.

6

| [Counsel:] | In the years that Kenneth Berry was president of Skyeagle, how many times did he hire employees for Skyeagle? |
|---|---|
| [Marty:] | Never. |
| [Counsel:] | Do these tax returns that are now admitted . . . do they show whatever income Skyeagle would have occurred over the years? |
| [Marty:] | Yes, sir. |
| [Counsel:] | And is it nothing or next to nothing? |
| [Marty:] | It's zero. That's pretty close to nothing. |
| [Counsel:] | And during the years that Kenneth Berry was president of Skyeagle, how many years did Kenneth Berry make at Skyeagle money? |
| [Marty:] | Well, 35 years[:] zero. |

Marty testified that Skyeagle existed on "corporate welfare" for thirty-five years, relying on funds from Bay and Berry to remain operative. The purpose of the Shareholder's notice was for the Defendant Directors to review their "options" and "do business that hadn't been done in 35 years with the company." Marty denied engaging in any discussions regarding corporate dissolution, apart from placing the item on the agenda for the shareholder's meeting.

Marty was then pressed regarding Defendant Directors' intent to dissolve the company:

| [Counsel:] | Okay. Do you have the intention of shutting down Skyeagle? |
|---|---|
| [Marty:] | Do I have—no, not at all. Never said that. |
| [Counsel:] | Do you have any idea whether Dennis has any intention of shutting down Skyeagle? |
| [Marty:] | I do not. |

[Counsel:]     Can you explain to the Court why you won't agree to be restrained from not shutting down Skyeagle?

[Marty:]     I would tell the Court that I would like the opportunity to run the business with our directors and our shareholders without any restraints, just like the bylaws had from the very beginning. Absolutely nothing has been done with this business for 35 years. We['re] in a lawsuit in another courtroom. If there's a way to settle it, get money for Skyeagle to pay our bills and have some money leftover, I'll benefit more from doing that. I don't want any restraints whatsoever put on me as a business person, especially at this time when it's so critical.

If we do get these restraints put on us[,] it's going to kill this business. And you can think about it yourself, Judge, and all you have to think about is, if you shut us down from doing anything with the only asset we have and we can bring zero money in and they get an adverse ruling in another Court, we're done. We're done. We can't do anything with it. The judge over there can take it, but we [would] like to just be able to run the business like it needs to be run. We're trying to make those steps. I tried to have a meeting to do so. I don't want any restraints on anything. I won't agree to anything. If the other—

[Counsel:]     Let me ask you this, sir: Will you promise not to shut Skyeagle down?

[Marty:]     I'm not going to promise you anything.

### 3. Trial Court's Findings

Following the hearing, the court took the matter under advisement. On April 5, pursuant to § 65.011 of the Texas Civil Practice and Remedies Code and § 2.104 of the Texas Business Organizations Code, the trial court issued a written order granting appellees' temporary injunction, enjoining the Defendant Directors from:

a. taking any action, directly or indirectly, to obligate Skyeagle to pay debts or transfer funds to any entity in which the Defendants directly or indirectly own an interest;

8

b. taking any action, directly or indirectly, to obligate Skyeagle to defend or indemnify the Defendants in any matter;

c. taking any action, directly or indirectly, to dissolve Skyeagle.

*See* TEX. CIV. PRAC. & REM. CODE § 65.011; TEX. BUS. ORGS. CODE § 2.104.

The trial court determined the applicants had met their burden for relief under both statutes and found that the Defendant Directors were likely to "complete the plan they proposed in the [Shareholder] Meeting Notices and, as a result of these actions, that [Kenneth] and Skyeagle would suffer probable harm, and that [Kenneth] would likely succeed on the claims for breach of fiduciary duty." This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's decision to grant a temporary injunction for an abuse of discretion. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citations omitted); *Super Starr Int'l, LLC v. Fresh Tex. Produce, LLC*, 531 S.W.3d 829, 838 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.). The test for abuse of discretion is whether the trial court ruled arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *See Super Starr*, 531 S.W.3d at 838. If evidence reasonably supports the trial court's decision, the trial court did not abuse its discretion. *See Butnaru*, 84 S.W.3d at 211.

We must consider the evidence submitted in the light most favorable to the trial court's ruling and draw all legitimate inferences from the evidence that support the ruling. *See Sargeant v. Al Saleh*, 512 S.W.3d 399, 410 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (citing *Butnaru*, 84 S.W.3d at 204). Our review of the trial court's decision is limited to the validity of its temporary injunction order; we do not consider the merits of

9

the underlying case. *See id.*

### III. RELIEF UNDER TEX. CIV. PRAC. & REM. CODE ANN. § 65.011

A temporary injunction is considered an extraordinary remedy and does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204 (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). Its purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Id.*; *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (defining status quo as "the last, actual, peaceable, non-contested status that preceded the pending controversy").

To obtain a temporary injunction under the Texas Civil Practice and Remedies Code § 65.011, an applicant must plead and prove all three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury. *Butnaru*, 84 S.W.3d at 204; *Burkholder v. Wilkins*, 504 S.W.3d 485, 491 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.). An injury is proved irreparable "if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204; *Burkholder*, 504 S.W.3d at 491. Although an applicant for a temporary injunction is not required to show that it will prevail on final trial, the applicant bears the burden of producing evidence of every single element. *See Walling*, 863 S.W.2d at 58.

Defendant Directors specifically argue that appellees failed to prove the second and third elements.[5] *See Butnaru*, 84 S.W.3d at 204; *Burkholder*, 504 S.W.3d at 491. We proceed on the dispositive third element of irreparable injury, where appellees contend

---

[5] Defendant Directors do not argue that the trial court abused its discretion because appellees failed to plead a cause of action, therefore it is not addressed in this appeal.

that these enjoined acts, if allowed, "will cause [disruption] to Skyeagle's present and future business" and strip Kenneth of his shareholder rights—rendering damages irreparable.[6] Appellees do not, however, argue that the Easement or loss thereof is the basis for a finding of irreparable injury nor are we able to consider the Easement given the trial court's abatement order of "all issues regarding the rail easement" signed on the same day as the injunction.[7] *See Abatement*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The act of eliminating or nullifying."). Removing consideration of the Easement in the irreparable injury analysis, Defendant Directors argue that monetary damages would be an adequate remedy at law, precluding the necessity of a temporary injunction. We agree.

## A.      Present and Future Business

During the hearing, Kenneth sought to elicit evidence that damages were unquantifiable because Defendant Directors were threatening to disrupt Skyeagle's present and future business. However, the following facts remain undisputed by either party: (1) Skyeagle has been inactive for the last twenty-five years; and (2) Skyeagle has no current or former clients. While Kenneth cites *Frequent Flyer Depot, Inc. v. American Airlines, Inc.* for the proposition that a disruption to an ongoing business may constitute irreparable, unquantifiable damages, *Frequent Flyer* is distinguishable from the present

---

[6] Appellees also argue that Marty's inability to testify to the specific amount of debts and fees owed by Skyeagle—beyond his passing references to the company's tax filings, which were admitted into evidence at the injunction hearing—is proof of damage incalculability. However, in a temporary injunction hearing, the burden is on the applicant to prove that potential damages cannot be calculated, not for the opposing party to disprove or prove the notion. *Wash. DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 742 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *see also Counsel Fin. Servs., L.L.C. v. Leibowitz*, No. 13-10-00200-CV, 2011 WL 2652158, at *8 n.5 (Tex. App.—Corpus Christi–Edinburg July 1, 2011, pet. denied) (mem. op.).

[7] Moreover, we note that based on the plain language of the injunction, the sale of the Easement— absent subsequent transfer of funds or payment of debt from the sale's proceeds—would not be in violation of the injunction.

case. 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009, pet. denied). In *Frequent Flyer*, where American Airlines produced evidence of "intangible harm" to its business, including loss of customer confidence, loss of goodwill with business partners, and diversion of resources away from legitimate customers, the court held the evidence of intangible harm was sufficient to establish that the airline would be without an adequate remedy in damages. *Id.*

Whereas here, apart from statements by Kenneth that Skyeagle *could* be operational and that it was Defendant Directors' fault that Skyeagle was not presently operational, Kenneth proffered no evidence of existing business or related intangibles requiring protection. *Cf. id.*; *see, e.g.*, *Intercont. Terminals Co. v. Vopa N. Am., Inc.*, 354 S.W.3d 887, 896 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (providing that testimony evidencing "business disruption, loss of goodwill, loss of reputation in the marketplace, customer uncertainty, delays in servicing dock/sea customers, backlog costs, [and] demurrage fees" was sufficient to support the trial court's conclusion that the harm could not be remedied with a monetary recovery). Kenneth provides us with no case law, and we have found none, in support of the premise that a disruptive threat of a corporation's hypothetical operations—where currently none exists nor ever existed—evokes intangible protection principles.

## B. Shareholder Rights

Kenneth alternatively argues that if the enjoined decisions are allowed, the value of his 500 shares of stock, purchased for $500, would be affected, and he would effectively lose his shareholder's rights: "Obviously, if Skyeagle is shut down then that's going to cause an irreparable eminent injury . . . . [Kenneth] won't have any more

12

shareholder rights. The value of his stock goes to zero, and he can't do anything about it. So that's irreparable injury, Judge."

By Kenneth's own representation, Skyeagle "should have profits," but it does not. The record is replete with evidence that Skyeagle is a for-profit corporation, with zero profits, subject to Texas Business Organization Code adherence. *See* TEX. BUS. ORGS. CODE ANN. §§ 21.201–21.226 (shareholders rights). The business organization code also includes a comprehensive statutory framework for winding up the affairs of a corporation and protecting the rights of creditors and shareholders. *See* TEX. BUS. ORGS. CODE §§ 21.502 (initiation of dissolution); 11.052 (winding up procedures); 11.053 (property applied to discharge liabilities and obligations). Therefore, on the record presented, where purported damages are premised on a shareholder status, calculated based on the valuation of a company with nonexistent profits and a shareholder buy-in of $1 per share of stock, Kenneth has not proven that money damages could not compensate him or that such damages are incapable of calculation. Kenneth's risk for loss, if actuated, could be remedied by financial compensation. *See id.*; *see also N. Cypress*, 296 S.W.3d at 176 (providing where a shareholder's ownership interest "gives him no voice in the control or management," a shareholder's "desire to keep [his] shares does not, by itself, render money damages an inadequate substitute.").

We need not partake in an analysis of the remaining elements for injunctive relief. *See Walling*, 863 S.W.2d at 58; TEX. R. APP. P. 47.1. Absent evidence of an irreparable harm, appellees were not entitled to injunctive relief. *See Butnaru*, 84 S.W.3d at 210; *Super Starr*, 531 S.W.3d at 838. Therefore, the trial court exceeded the bounds of reasonable discretion in holding otherwise. *See Butnaru*, 84 S.W.3d at 210; *see also*

13

*Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017) ("No abuse of discretion exists if some evidence reasonably supports the court's ruling."). We sustain appellants' first issue.

## IV. RELIEF UNDER TEX. BUS. ORGS. CODE ANN. § 2.104(b)(2)

During the temporary injunction hearing and on appeal, appellee alternatively argues that Kenneth, as a shareholder, had the independent statutory right to temporarily enjoin Defendant Directors' proposed actions under the business organizations code § 2.104(b)(2). TEX. BUS. ORGS. CODE ANN. § 2.104(b)(2) (providing that "a proposed guaranty may be enjoined at the request of an owner of the domestic entity on the ground that the guaranty cannot reasonably be expected to benefit the domestic entity").

A statute's general authorization of enjoinment, however, is insufficient to abrogate the common law irreparable injury requirement. *See generally Town of Palm Valley v. Johnson*, 87 S.W.3d 110, 111 (Tex. 2001) (acknowledging statutes may abolish the common law requirement of irreparable injury); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 65.001 ("The principles governing courts of equity govern injunction proceedings if not in conflict with this chapter or other law."); *but see Alpine Gulf, Inc. v. Valentino*, 563 S.W.2d 358 (Tex. Civ. App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.) (holding where shareholder sought injunctive relief under the same title and chapter of the Business Organizations Code, against the transfer of assets from a corporation to its subsidiaries, the trial court erred in granting a temporary injunction absent evidence of irreparable injury).

Although no case specifically speaks to enjoinment on the basis of § 2.104(b)(2), this case is distinguishable from cases which have held that the statutory language eliminated the applicant's burden of proving irreparable harm. *Compare Butler v. Arrow*

14

*Mirror & Glass, Inc.*, 51 S.W.3d 787, 795 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (holding where the statute explicitly provides that remedies of the code under which injunctive relief is sought "are exclusive and preempt any other criteria for enforceability of a covenant . . . and remedies in an action to enforce a covenant not to compete under common law or otherwise," unequivocally dictates that irreparable injury is not a prerequisite for obtaining injunctive relief (citing TEX. BUS. ORGS. CODE ANN. § 152.211)) *with Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.*, 394 S.W.3d 186, 197–99 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that § 152.211(b) of the Texas Business Organizations Code, in its general authorization of injunctions to "'enforce a right under the partnership agreement' and the like," for a breach of the agreement or "for the violation of a duty to the partnership causing harm to the partnership," does not define the requisite injury entitling the applicant to injunctive relief" and therefore, applicants were required to show irreparable injury in order to be entitled to temporary injunctive relief). Like *Sonwalker* and unlike *Butler*, the statute here lacks a provision eliminating the irreparable injury requirement. *See Butler*, 51 S.W.3d at 795; *Sonwalkar*, 394 S.W.3d at 197–99; *see also* TEX. BUS. ORGS. CODE ANN. § 2.104(b)(2); TEX. CIV. PRAC. & REM. CODE ANN. § 65.001. Having already determined that applicants failed to provide evidence of irreparable harm, we subsequently find the trial court was without evidentiary support to alternatively grant relief under § 2.104(b)(2). *See Henry*, 520 S.W.3d at 34; *Butnaru*, 84 S.W.3d at 210. We sustain appellants' second issue.

**V.     CONCLUSION**

We reverse the trial court's temporary injunction order, dissolve the temporary injunction, and remand this case to the trial court for proceedings consistent with this opinion.

GREGORY T. PERKES
Justice

Dissenting Memorandum Opinion by
Justice Benavides.

Delivered and filed the
5th day of December, 2019.