

# NUMBER 13-21-00118-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOHN S. BULLINER JR.,                                                      Appellant,

v.

EL CHICO GARCIA JR. AND
TYSON GARCIA,                                                              Appellees.

## On appeal from the 61st District Court
## of Harris County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña
Memorandum Opinion by Justice Peña**

Appellant John S. Bulliner Jr. appeals the trial court's denial of his request for a temporary injunction requiring appellees El Chico Garcia Jr. and Tyson Garcia (the Garcias) to remove a residential structure that was inadvertently built on Bulliner's land.

In three issues, which we treat as one, Bulliner argues the trial court abused its discretion in denying his request because he established the required elements for temporary injunctive relief. We affirm.[1]

## I.     BACKGROUND

The Garcias retained Precision Surveyors, Inc. (Precision) to survey the boundaries of their property located in an unincorporated area of Harris County, Texas. In 2016, the Garcias completed the construction of a home on the property, costing approximately $300,000. According to Precision's survey, the home was located on Lots 16–18, which were owned by the Garcias.

The Garcias later discovered that their home was actually built on Lots 13 and 14, which they did not own. John C. Mays owned Lot 13 and Bulliner owned Lot 14. Mays first discovered that the home was encroaching on Lot 13 when, in 2018, the appraised value of his land increased. On May 8, 2019, Mays sent the Garcias a letter demanding they remove the portion of their home encroaching on his property.

### A.     The Garcias' Suit and Mays's Intervention

The Garcias sued Precision and its president, Barry D. White, for breach of contract, deceptive trade practices, negligence, and negligent supervision.[2] Precision answered and asserted a general denial. Mays then intervened, alleging claims of negligence, trespass, and nuisance against the Garcias. Mays sought damages and a temporary and permanent injunction requiring the Garcias to remove the part of their

---

[1] This case is before the Court on transfer from the First Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] Precision and White are not parties to this appeal.

2

house encroaching on Mays's land. The Garcias answered and asserted the affirmative defenses of limitations, contributory negligence, estoppel, ratification, waiver, and "acts or omissions of third parties."

At the hearing on Mays's application for a temporary injunction, El Chico[3] testified that "we thought we were building on our own property" and that Mays did not claim the Garcias' house was being built on his property during construction. El Chico stated there are no other structures on the property. He claimed it is impossible to move his home because it has a concrete foundation. El Chico maintained that he is currently paying property tax on the improvements to Lots 13 and 14.

Mays testified his father bought Lot 13—"[a]pproximately half an acre"—in the 1960s, and he later acquired ownership after his parents passed away. Mays stated that his property taxes increased in 2018. Mays then went to inspect the property, and he discovered a house partially encroaching on his land. Mays admitted he had not "been to the property for a while" before 2018. Prior to the home's construction, Mays said the property "was just raw land with trees." On cross-examination, Mays conceded that he "had done nothing with this property" and that it was evaluated to be worth "about $4,000" before the home's construction. Mays claimed he visited the property six times in the past four years. He represented that he has never listed the property for sale. Mays agreed that the Garcias' house could not be moved without destroying it because it has a concrete slab foundation. At the conclusion of the hearing, the trial court denied the application for a temporary injunction. Mays did not seek an interlocutory appeal from this order.

---

[3] We refer to parties that share a surname by their first name to avoid confusion.

3

**B.      Bulliner's Intervention**

Before the case proceeded to a final disposition, and more than four years after the Garcias built their home, Bulliner, the owner of Lot 14, intervened and asserted the same claims for trespass, nuisance, and negligence against the Garcias. Like Mays, Bulliner sought damages and temporary and permanent injunctive relief requiring the removal of the Garcias' home. Bulliner attached to his petition property tax records which showed that the assessed value of his lot increased from $4,089 to $32,712 since the home's construction. He also attached correspondence from the Garcias in which they offered to purchase Bulliner's property or swap deeds to their respective lots.

The trial court held a hearing on Bulliner's application for temporary injunctive relief. After hearing the arguments of counsel, the trial court orally denied the application. It then permitted Bulliner to make an offer of proof. Bulliner's counsel then stated that the evidence would show "an undisputed trespass by the Garcias." He also claimed the lots the Garcias proposed to swap are "different lots that are closer to a planned road expansion" without connections for power. He claimed that those lots are subject to flooding. Finally, Bulliner's counsel stated the Garcias' lots were encumbered by two mortgages.

The trial court later signed an order denying Bulliner's application for a temporary injunction. Bulliner brings this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4).

4

## II.    Discussion

**A.    Standard of Review & Applicable Law**

We review the trial court's ruling on a temporary injunction application for an abuse of discretion. *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 838 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). A trial court abuses its discretion when it acts "arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence." *Id.* (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)). "A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru*, 84 S.W.3d at 204. "The status quo is the last, actual, peaceable, noncontested status which preceded the pending controversy." *Tex. Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 437 (Tex. App.—Austin 2018, pet. denied) (internal quotations omitted); *see Dyer v. Weedon*, 769 S.W.2d 711, 715 (Tex. App.—Waco 1989, no writ) ("Status quo, in cases involving possession of real property, is the last actual, peaceable, non-contested status of the parties and real property which existed immediately prior to the pending lawsuit.").

"Temporary injunctions are an extraordinary remedy and do not issue as a matter of right." *Clark v. Hastings Equity Partners, LLC*, 651 S.W.3d 359, 366 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (citing *Butnaru*, 84 S.W.3d at 204). To obtain a temporary injunction, an applicant must establish the following: (1) a cause of action; (2) a probable right to relief; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* (citing *Butnaru*, 84 S.W.3d at 204). In establishing a probable right to relief, "[t]he applicant is not required to establish that he will finally prevail in the litigation." *Pharaoh*

*Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 880–81 (Tex. App.—El Paso 2011, no pet.). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204 (citing *Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ)).

"There are two general types of temporary injunctions: prohibitive and mandatory." *Ranchero Esperanza*, 343 S.W.3d at 882–83 (citing *RP & R, Inc. v. Territo*, 32 S.W.3d 396, 400 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). While a prohibitive injunction forbids conduct, a mandatory injunction requires it. *Id.* at 883 (citing *Lifeguard Benefit Servs., Inc. v. Direct Med. Network Sols., Inc.*, 308 S.W.3d 102, 112 (Tex. App.—Fort Worth 2010, no pet.)). A temporary mandatory injunction generally changes the status quo and should be granted only in cases of extreme hardship. *Id.* (first citing *Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex. 1981); and then citing *RP & R*, 32 S.W.3d at 401); *see Boatman v. Lites*, 888 S.W.2d 90, 92 (Tex. App.—Tyler 1994, no writ) ("It is only under exceptional circumstances that a mandatory injunction will be granted prior to a final hearing . . . .").

"A request for injunctive relief invokes a court's equity jurisdiction." *In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002) (orig. proceeding). "In considering an application for a temporary injunction, a trial court balances the equities between the parties as well as the resulting conveniences and hardships." *Burkholder v. Wilkins*, 504 S.W.3d 485, 493 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (citing *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 578 (Tex. App.—Austin 2000, no pet.)). "A trial court may consider whether significant or slight injury would result if the injunction were erroneously

6

denied, and whether significant or slight injury would result if the injunction were erroneously granted." *Id.* (first citing *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 162 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.); and then citing *Coastal Marine Serv. of Tex., Inc. v. City of Port Neches*, 11 S.W.3d 509, 515 (Tex. App.—Beaumont 2000, no pet.)).

B.      **Analysis**

Bulliner argues that he is entitled to a mandatory temporary injunction due to the Garcias' undisputed trespass. The Garcias respond that temporary injunctive relief is improper because it would disrupt the status quo of the Garcias' possession of the property. The Garcias further argue that Bulliner presented no evidence that he would suffer a probable, imminent, and irreparable injury absent the removal of the home or that he could not adequately be compensated by damages.

Permanent injunctive relief is an available remedy for a trespass that is created by an encroaching structure. *See Allen v. Va. Hill Water Supply Corp.*, 609 S.W.2d 633, 636 (Tex. App.—Tyler 1980, no writ) (explaining that a continuing encroachment is a trespass and that "[a]n owner whose land is subjected to an encroachment may seek equitable relief against further maintenance or to compel its removal"). But even in the context of a permanent injunction, courts must still examine the competing equities, while balancing the conveniences and hardships. *See Triantaphyllis v. Gamble*, 93 S.W.3d 398, 401 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). As our sister court explained:

> When one builds a structure on another's property, the owner can either treat the encroachment as a permanent trespass, and sue for damages, or pray for an injunction compelling its removal. If the encroachment has been intentional and if the trespasser has been grossly negligent in ascertaining the correct property line, most courts will grant a mandatory injunction for removal. To the contrary, most courts will refuse an injunction when the

7

encroachment is slight and unintentional, the cost of removing it great and the corresponding benefit to the owner is small, or when full compensation can be given in damages.

*Coleman v. Forister*, 497 S.W.2d 530, 533 (Tex. App.—Austin 1973), *rev'd on other grounds*, 514 S.W.2d 899 (Tex. 1974); *see Nolte Irr. Co. v. Willis*, 180 S.W.2d 451, 455 (Tex. App.—Amarillo 1944, writ ref'd w.o.m.) ("[T]he extraordinary remedy of permanent mandatory injunction compelling the alteration, destruction, or removal of property should be granted with great caution and should not be granted unless serious injury is being inflicted or, in all probability, will be inflicted.").[4]

In this case, Bulliner must overcome an even greater burden because he is seeking a mandatory injunction as a form of temporary relief. *See Boatman*, 888 S.W.2d at 92 (explaining that the general rule is that a temporary injunction may not be used to obtain all relief sought by the suit). In this context, Texas courts require the applicant to demonstrate "exceptional circumstances," *id.*, or "extreme hardship." *Ranchero Esperanza*, 343 S.W.3d at 883.

The record shows that prior to the home's construction, Bulliner's property was an unimproved lot. It is undisputed that the Garcias built their home without contemporaneous complaint. Bulliner does not occupy the land, and, as indicated by his delay in discovering the encroachment, he rarely visits. Bulliner cites only his temporary inability to sell his unimproved lot until a final determination on the merits as support for his injury. This is not an irreparable injury because it can be remedied by an award of

---

[4] Similarly, many jurisdictions recognize "an equitable 'relative hardship' doctrine to assess whether, regardless of a legal trespass, equity may yet preclude issuance of mandatory injunctive relief in favor of pecuniary damages at law in certain limited circumstances, thereby effecting an equitable easement in favor of an unintentional, non-negligent trespasser." *Davis v. Westphal*, 405 P.3d 73, 87 n.10 (Mont. 2017) (collecting cases); *see* RESTATEMENT (SECOND) OF TORTS § 941 cmts. c, d (AM. L. INST. 1979).

damages. *See Butnaru*, 84 S.W.3d at 204. On the other hand, we note that injunctive relief would result in the destruction of the Garcias' $300,000 home, which they have lived in since 2016. Further, according to the evidence from the hearing on Mays's temporary injunction, the Garcias' alleged trespass was unintentional. They intended to build their home on their own land, and they commissioned a professional surveyor to ensure this happened. That the house was built partially on Bulliner's property was the result of a surveying mistake.

In examining the equities and considering the relative conveniences and hardships, the trial court could have reasonably concluded that only a slight injury would result if the injunction were erroneously denied, but a significant injury would result if the injunction were erroneously granted. *See Burkholder*, 504 S.W.3d at 493. Relatedly, the record supports the trial court's implicit conclusions that Bulliner did not demonstrate an irreparable injury, much less the exceptional circumstances or extreme hardship required to support a temporary mandatory injunction. *See Ranchero Esperanza*, 343 S.W.3d at 883; *Boatman*, 888 S.W.2d at 92. Therefore, we conclude that the trial court did not abuse its discretion in denying relief. *See Super Starr*, 531 S.W.3d at 838. We overrule Bulliner's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA
Justice

Delivered and filed on the
6th day of April, 2023.

9