

# NUMBER 13-19-00108-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

TIMOTHY WILKINS,                                                    **Appellant,**

**v.**

LAGUNA BAY CONDOMINIUM
ASSOCIATION, INC.,                                            **Appellee.**

### On appeal from the 445th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Benavides**

By two issues, appellant Timothy Wilkins appeals the jury verdict in favor of appellee Laguna Bay Condominium Association, Inc. (Laguna Bay). Wilkins alleges that there was (1) legally and (2) factually insufficient evidence to support the judgment. We affirm.

# I. BACKGROUND

This case arises from a long-standing disagreement between Wilkins and Laguna Bay. This appeal derives from the third lawsuit between the parties.

In 2009, Wilkins purchased North Unit 203 at Laguna Bay in South Padre Island, Texas. His unit, as well as others in the complex, were damaged by Hurricane Dolly. Due to water leaks in his unit, Wilkins and another condo owner, Gregory Kunkle,[1] filed suit against Laguna Bay (first suit). In October 2013, the parties entered into a settlement agreement (the Agreement) in which Laguna Bay agreed to certain terms and conditions. Important to this case are the following sections:

> 3.A.   [Laguna Bay] agrees to make the repairs, and further investigations called for, and any additional repairs recommended as a result of the further investigations in the July 9, 2013 Final Report of WJE [Wiss, Janney, Elstner Associates, Inc.] within 36 months of the date of this [Agreement], except if that becomes impossible by force majeure or by Acts of God. However, the prioritization and sequence of the work, and the selection of available options, shall be up to the discretion of the [Laguna Bay] Board after consultation with WJE. Notwithstanding the foregoing, any repairs that the [Laguna Bay] Board and the Homeowners deem economically unfeasible do not have to be made.
>
> B.   Notwithstanding A above, within 6 months of the date of the approval of this [Agreement] by the Homeowners, if such approval is obtained, the [Laguna Bay] shall:
>
> > 1.   Secure a report from Bob Fudge, P.E., on what repairs are needed to repair leaks to Plaintiffs' Units; and
> >
> > 2.   Effect such repairs at [Laguna Bay's] expense.
>
> . . . .
>
> D.   The [Laguna Bay] will specify to Plaintiffs, within 60 days of the date of the [Agreement], which available sliding glass doors Plaintiffs may

---

[1] Kunkle was not a party to any of the subsequent lawsuits between Wilkins and Laguna Bay.

use on their Units.

. . . .

G.    Plaintiffs shall be responsible for their pro-rata share of any assessments required for the [Laguna Bay] to comply with No.'s A, B & C above.

In 2015, Wilkins filed a second lawsuit (current suit) alleging noncompliance with the requirements of the Agreement. His amended petition also alleged that Laguna Bay requested a repair assessment of $91,316 from each of the owners. Laguna Bay filed a counter-claim against Wilkins for breach of contract and covenants and requested declaratory relief. Wilkins refused to pay the repair assessment because he stated that Laguna Bay did not perform contractually under the Agreement, but alleged that Laguna Bay made repairs to other units in the complex.[2] The trial court granted a temporary injunction enjoining Laguna Bay from collecting the assessment from Wilkins and from foreclosing on Wilkins's condo while this case proceeded.[3]

Trial on the merits proceeded. Wilkins testified that Unit 203 had been foreclosed on and that was how he came to purchase it. He stated that there was water damage to the unit after Hurricane Dolly and he notified Laguna Bay, but nothing came of it. Wilkins explained that is why he initiated the first lawsuit in 2013, which resulted in the Agreement. He signed the Agreement in October 2013 and received $10,000 from Laguna Bay, which he believed was for "fees and expenses" due to the lawsuit. Wilkins believed that Laguna

---

[2] Wilkins's first amended petition alleged "Specifically, though not by way of limitation, Defendants have failed and refused to comply with their obligations under Sections 3.B.2, 3.D of the [Agreement]."

[3] Laguna Bay appealed the temporary injunction to this Court and we affirmed the trial court's granting of the injunction. *See Burkholder v. Wilkins*, 504 S.W.3d 485 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.).

3

Bay had an "obligation to repair" his condo at "its expense." He testified that his family had never been able to use the condo, he was never able to rent it out until recently after Laguna Bay finished repairs on the entire building, and he incurred significant legal fees from this lawsuit. Wilkins stated he last used the condo in 2011 and last rented it in 2013. He estimated the weekly rental fee was $1450 and based on the determination of 184 weeks unoccupied, he lost approximately $266,800 in rental income.

Wilkins testified that he has not repaired his unit because once when he previously had repaired it, the damage returned due to the water leaks. Wilkins had PuroClean, a mold remediation company, evaluate his condo and they estimated $64,165.87 to repair the mold damage. Wilkins also stated that Laguna Bay had the WJE report in July 2013, before the Agreement was signed, so it knew what the "issues" and damages were before it entered into the Agreement. Wilkins explained that he turned the electricity off to the unit because he "didn't want to pay for what he couldn't use," but disagreed with Laguna Bay that the damage got worse after he disconnected the electricity. Wilkins testified that he was "angry" Laguna Bay "broke the deal" in the Agreement. He explained that Laguna Bay had the Fudge report in December 2013, which found the issues and offered solutions, but did nothing to make any repairs.

On cross-examination, Wilkins said there was some damage in 2009, but it was not as severe as it was currently. He also admitted he had Joe Villarreal, a contractor Laguna Bay used, look at the unit after an upstairs neighbor had a water heater leak, but stated he never repaired the damage because he did not get any money for the repair. Wilkins explained that he sent Laguna Bay an email in January 2015 that he was going

4

to do a complete remediation of his unit to "get a reaction" and notify it that it was in "breach of the [A]greement" and he was going to sue. He agreed with Laguna Bay that in order to repair the water leaks, the source needed to be located, but Wilkins stated that Laguna Bay "also have to look for it." He disagreed that all the water damage was coming from "above" as Laguna Bay stated; he stated there was also water penetrating the stucco from the sides. Wilkins agreed that even though the homeowners agreed to pay the assessment, he still had not paid it and also had an outstanding balance on his homeowner association (HOA) fees.

Joseph Furcron with Furcron Property Management Company testified that he manages Laguna Bay. He agreed that Wilkins's estimate of $1450 for a weekly rental seemed reasonable, but explained that rentals are at best forty to fifty percent occupancy, not over seventy-five percent occupancy as Wilkins estimated. Furcron also agreed that Laguna Bay requires a one-week rental at the minimum and explained that the air conditioner units are left on to prevent mold and mildew from forming. Furcron told the jury that he knew that Laguna Bay had attempted to foreclose on Wilkins's property, and at the time of trial, Wilkins owed $91,316 for a repair assessment fee, $1,791 for a plank assessment, $3,008 in additional repairs around the complex, and $23,816.49 in HOA fees. Furcron also explained that it was his understanding that Wilkins had not paid his amount owed due to an injunction, the previous lawsuit dealt with the foreclosure, and currently he owed $130,980.44. Furcron stated that based on his experience and understanding of the Agreement, he did not believe Laguna Bay had to abide by the Agreement because Wilkins was behind on the money he owed. He testified that Wilkins

5

was late on his HOA dues two months after signing the Agreement and that Wilkins made "random" payments for monies owed, but not regular ones. Furcron agreed with Laguna Bay's counsel that there was no court order preventing Wilkins from paying his HOA dues.

Joseph Urbanek testified that he was Laguna Bay's president from around 2013 to 2017. He said the first suit was for repairs to leaks. Urbanek explained Laguna Bay had the WJE report in July 2013, but there were no recommendations on how to remedy the leak issues and the WJE report suggested a more detailed investigation to uncover the source of the leaks, which Laguna Bay agreed to. Urbanek agreed that the repairs were not done on time as per the Agreement, but that the exterior of Wilkins's unit is one hundred percent repaired. He said there were no repairs made to the interior of the unit. Urbanek disagreed that the Agreement called for Laguna Bay to make repairs to both the exterior and interior of the unit where it was damaged; he said he made sure when the lawyers called him about the Agreement that it did not include repairs to the interior. Urbanek admitted that Laguna Bay had paid for interior repairs to another unit one time by mistake, but the owner repaid Laguna Bay for that expense. Urbanek said the Agreement did not remove Wilkins's obligation to pay his HOA dues.

On cross-examination, Urbanek stated both the Fudge and WJE reports were based on visual inspections of the properties, the Agreement was to "repair leaks," and the inside of a unit was the owner's responsibility. He explained the Fudge report could not find a workable solution to the water leaks and that further investigation by WJE determined that the leaks were from structural defects to the condominium complex. Laguna Bay undertook massive repair renovations that totaled near $2.5 million dollars

6

and were completed in April 2017. All the unit owners paid the repair assessments except Wilkins, even though he had agreed to the assessment by a proxy voting for him.

Villarreal testified that he volunteered to do a study at Laguna Bay to determine where the water damage was from. Villarreal stated he could tell the leaks were from above because there was water damage inside the condos by the windows and doors. He explained that in 2011, Wilkins's unit did have more water damage than others, but it was not the worst. He saw Wilkins's unit in 2014 and stated it was still "habitable," but when he entered the unit in 2016, Villarreal said it was very hot, had a "horrible stench," there was no air circulation, and he was worried about mold. He explained that without air conditioning, there can be "a lot of damage" created with mold, and he felt that with the air conditioner off, it led to the mold growth within the unit.

Following the conclusion of the evidence, the trial court granted a directed verdict against Wilkins for: $23,816.49 for the HOA fees; $91,316.00 for the repair assessment; $1,791.00 for the Hardy plank assessment; and $3,008.00 for additional repairs assessment. The jury answered three questions in the jury charge:

1.     Did [Laguna Bay] fail to comply with the October 18, 2013 Compromise, Settlement, and Release Agreement?

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

1.     the extent to which the injured party will be deprived of the benefit which he reasonably expected;

2.     the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

3.     the extent to which the party failing to perform or to offer to

perform will suffer forfeiture;

4. the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

5. the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Answer "Yes" or "No."

Yes

2. Was [Laguna Bay]'s failure to comply excused?

Failure to comply by [Laguna Bay] is excused by [Wilkins]'s prior repudiation of the same agreement.

A party repudiates an agreement when he indicates, by his words or actions, that he is not going to perform his obligations under the agreement in the future, showing a fixed intention to abandon, renounce, and refuse to perform the agreement.

Failure to comply by [Laguna Bay] is excused if compliance is waived by [Wilkins].

Waiver is an intentional surrender of a known right of intentional conduct inconsistent with claiming the right.

Failure to comply by [Laguna Bay] is excused by [Wilkins]'s previous failure to comply with a material obligation of the same agreement.

Answer "Yes" or "No."

Yes

5. What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [Laguna Bay] for its' attorney's fees, if any?

Zero.

In accordance with the jury's findings, the trial court rendered judgment awarding Laguna Bay the damages from the directed verdict and awarding Wilkins zero damages. A motion for new trial was denied and this appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Wilkins argues that the evidence was both factually and legally insufficient to support the jury's answer to Question Two of the jury charge that found Laguna Bay's breach to be excused.

### A. Standard of Review

A legal sufficiency challenge will be sustained when the record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *see also Int'l Paper Co. v. Signature Indus. Servs., LLC*, No. 13-18-00186-CV, 2020 WL 2079145, at *18–19 (Tex. App.—Corpus Christi–Edinburg Apr. 30, 2020, pet. filed) (mem. op.). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. We review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable fact-finder could and disregarding any contrary evidence unless a reasonable fact-finder could not. *Id.* at 821–22, 827. In our review, we are mindful that the jury remains the sole judge of witnesses' credibility and the weight to be given to their testimony. *Id.* at 819–20. Moreover, in our legal sufficiency review, we

9

must show deference to the jury's resolution of conflicts in the evidence, and we must presume that the jury resolved all conflicts in favor of the verdict. *Id.* at 820–21.

When a party attacks the legal sufficiency of an adverse finding on an issue on which that party has the burden of proof at trial, the complaining party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). We review a matter of law challenge by first examining the record for evidence that supports the adverse finding, while ignoring all evidence to the contrary. *Id.* If we do not find evidence to support the finding, we will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* "The point of error should be sustained only if the contrary proposition is conclusively established." *Id.*

We examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding in our factual sufficiency review. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *see also Natural Soda LLC v Bunnett & Co., Inc.*, No 13-17-00558-CV, 2020 WL 1951454, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2020, no pet. h.) (mem. op.). "In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the appellant had the burden of proof, the appellant must show that 'the adverse finding is against the great weight and preponderance of the evidence.'" *Editorial Caballero, S.A. de C.V. v. Playboy Enterprises, Inc.*, 359 S.W.3d 318, 329 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied) (citing *Dow Chem. Co.*, 46 S.W.3d at 242).

The fact finder is the sole judge of the witnesses' credibility and may choose to believe one witness over another. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We may not substitute our own judgment for that of the jury, even if we would reach a different answer based on the evidence. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Maritime Overseas Corp.*, 971 S.W.2d at 407).

## B.    Applicable Law

The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *C.W. 100 Louis Henna, Ltd. v. El Chico Rest., L.P.*, 295 S.W.3d 748, 752 (Tex. App.—Austin 2009, no pet.). A material breach by one party to a contract can excuse the other party from any obligation to perform. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."); *see Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994); *Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.). By contrast, a non-material breach does not excuse further performance but gives rise to a claim for damages for breach of contract. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam).

When one party to a contract materially breaches, the non-breaching party must elect to either terminate the contract or treat it as continuing and continue its own performance. *See Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982); *C&C Rd. Constr., Inc. v. SAAB Site Contractors, L.P.*, 574 S.W.3d 576, 585 (Tex. App.—El Paso 2019, no pet.); *MKM Eng'rs, Inc. v. Guzder*, 476 S.W.3d 770, 783 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A party who elects to treat a contract as continuing deprives itself of any excuse for ceasing performance on its own part. *Long Trs. v. Griffin*, 222 S.W.3d 412, 415–16 (Tex. 2006) (per curiam); *see Sloane v. Goldberg B'Nai B'Rith Towers*, 577 S.W.3d 608, 618 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *see also Young v. Talley*, No. 13-19-00199-CV, 2020 WL 5056530, at * 3 (Tex. App.—Corpus Christi–Edinburg Aug. 27, 2020, no pet. h.) (mem. op.).

## C.    Discussion

Wilkins argues that once Laguna Bay breached the Agreement, he was excused from any compliance with the Agreement. Here, based on the timelines established in the Agreement, Laguna Bay had six months from the date of the Agreement's approval to make repairs as detailed in the Fudge report. The Agreement was approved in October 2013, giving Laguna Bay until April 2014 to effectuate repairs based on the Fudge report. Additionally, Wilkins complained that Laguna Bay never notified him which sliding glass doors he could use as replacement doors as per the Agreement. The Agreement stated that Laguna Bay had to specify the doors within sixty days of the approval of the Agreement. However, Laguna Bay argues that Wilkins repudiated the Agreement when he filed suit prior to the expiration of the thirty-six-month period for compliance with the

12

WJE report.

The jury was not asked to specify which of the different sections of the Agreement it found Laguna Bay to have breached. But the jury determines the credibility of the witnesses and evidence presented to them, and it determined that both parties had breached the Agreement. *See City of Keller*, 168 S.W.3d at 820–21; *Golden Eagle*, 116 S.W.3d at 761; *GTE Mobilnet*, 61 S.W.3d at 616.

Here, when Laguna Bay breached the contract, Wilkins could have terminated the Agreement or elected to continue on with the Agreement. *See Griffin*, 222 S.W.3d at 415–16. Wilkins admitted that, when the initial breach occurred, he did not request information regarding the sliding doors from Laguna Bay. So, by his own admission, he elected to allow the Agreement to continue. The jury could have made the same determination. As time continued, neither party complied with the Agreement. Laguna Bay did not meet the deadlines the Agreement imposed, and Wilkins failed to pay the required special assessment fees and committed actions that could have caused more interior damages to his unit.

The jury could have reasonably found that Laguna Bay initially breached the contract, Wilkins's lack of response regarding the sliding doors meant he agreed to continue with the Agreement, and the remainder of Laguna Bay's breaches were excused by Wilkins's actions. We defer to the jury's finding and overrule Wilkins's first and second issues. *See City of Keller*, 168 S.W.3d at 820–21; *Golden Eagle*, 116 S.W.3d at 761; *GTE Mobilnet*, 61 S.W.3d at 616.

### III. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed the
17th day of September, 2020.